HOMER A. DAY, and ANNA C. DAY, his wife, *Appellants*, vs. L. J. WEADOCK and LENA WEADOCK, his wife; WILLARD UTLEY, Trustee in Bankruptcy of the estate of L. J. Weadock, Bankrupt; E. J. WEADOCK and MARY LOUISE WEADOCK, his wife, *Appellees*.

Division B.

Opinion filed April 28, 1931.

334

C. E. Chillingworth, Judge.

W. H. *Mizell*, of West Palm Beach, for Appellant;

W. F. *Finch* and C. L. *McCoy*, of West Palm Beach, for Appellees.

Davis, J.—This is a case wherein rescission and cancellation was sought by appellants. Two contracts are involved, by the terms of which appellants agreed to purchase and the appellees agreed to sell, two lots in Casa Loma, a subdivision of the Town of Boynton, in Palm Beach County. Appellees, as defendants in the court below, sought affirmative relief in the suit against the appellants for the balance of the purchase price due on the contracts. The Chancellor denied all relief sought by each party, and dismissed the bill. An appeal from the final decree brings the case here.

Errors are assigned on the sustaining of special demurrers to certain paragraphs of the bill of complaint and

on certain rulings on the admissibility of evidence made against the appellants, who were complainants in the Court below. Likewise the merits of the case must be considered on an assignment which challenges the propriety of the final decree as not being warranted by the evidence.

In his final decree the Chancellor made the following findings of fact:

"The theory of the second amended bill for rescission is fraud—either the false statement of present existing material facts, or promises to be performed in the future, with no intention on the part of the promisor, at the time of making the promises, of ever fulfilling them. On the first theory of fraud the only representations of fact, I find in sub paragraphs (g) and (h) in paragraph 5 of the second amended bill. From the evidence the falsity of these representations is not made to appear. On the second theory of fraud it does not appear from the evidence that, at the time of making the promises to be performed in the future, the owner had no intention of performing them.

I am highly suspicious of the activities of the agent and the owner, but the evidence is not sufficiently convincing to find them guilty of fraud. The very careful wording of the advertisements, so as to avoid facts and promises—the glowing generalities of the advertisements—the apparent willingness of the owner to accept complainants money, and at the same time disclaim responsibility for the utterances and promises of the agent—the careful wording of the printed contract to avoid any covenant to undertake improvements—the unusual aloofness of the owner to the sales campaign and activities of the agent—the installation of some improvements apparently in fulfillment of some obligation —the obvious lack of any intention on the part of the complainants to buy an orange and grapefruit grove on the basis of about $43,000.00 an acre—the fact that the

promises to make the stated improvements were no doubt made in order to induce the sale—the recognition of the obligation to make some improvements as evidenced in the letter written on behalf of the owner under date of March 11, 1926—the obvious desire of the complainants to buy land ·in an improved modern subdivision which would be surrounded by buildings, (which was no doubt known to the agent) and the obvious intention of the owner to sell something more than raw unimproved land in an area without buildings or the modern conveniences which are offered by public utilities or by the owner of a subdivision—all cause me to guess that complainants were the victims of a rather well planned "high pressure" sale campaign put on by two experts. The agent and owner have carefully guided their course of dealing so that there is no clear evidence of fraud, and it goes without saying that I have no right to enter a decree finding one guilty of fraud on even a strong suspicion,—where there is lack of clear and convincing proof."

Findings of fact by the Chancellor in all equity cases are now expressly required by the Federal Equity Practice. Where made in cases pending in our State Courts, this Court will not reverse the decree where the evidence is conflicting but sufficient to sustain the findings of fact so . made. Tatum Brs. v. Osborne, 83 So. 703, 79 Fla. 130; Com. Bank v. First National Bank. 87 So. 315, 80 Fla. 685.

The practice of making findings of fact in equity causes is not only commendable, but tends to greatly facilitate the disposition of the cause in an appellate court, where the findings serve to give the Court of review a guide by which the correctness of such findings can be checked and verified from an examination of the evidence adduced, and the legal conclusions of the Chancellor as expressed in his

final decree tested by the application of the proper rules of law to the facts so found.

In this case the ground of rescission is alleged representations as an inducement to purchase made by a licensed real estate broker who was handling the property of appellees for sale. Whether such broker was an agent with general authority to act on behalf of the owner, as contended by appellants, or merely a special agent for a single object whose representations would not bind the principal (El Reno Wholesale Grocery Co. v. Stocking, 127 N. E. 642) becomes immaterial to the disposition of the case, if it be held that the alleged representations have not been established by the evidence, or that if so established, they are insufficient in law to constitute a ground of rescission if made.

The allegations of the bill and the proof submitted fail to bring the case within the operation of the rule laid down in Sun City Holding Co. v. Schoenfield, 122 So. 252, 97 Fla. 777, and Southern Colonization Co. v. Derfler, 75 So. 790, 73 Fla. 924, for vendor's breach of covenants contained in a contract for the sale of real estate because no such covenants with reference to the matter complained of are shown in this case.

On the contrary, the grounds of rescission are similar to those that were passed on by this Court in the case of Nixon v. Temple Terrace Estates, Inc., 121 So. 475, 97 Fla. 392, where it was held:

"Any false representation of a material fact, made with knowledge of its falsity and with intent that it shall be acted on, entitles party deceived thereby to avoid contract or maintain action for damages sustained."

The foregoing holding, however, may be distinguished from the rule which obtains with reference to alleged rep-

resentations concerning mere speculative promises and matters of opinion, which do not constitute false representations of existing fact, and which are not shown to have been made with a present fraudulent intent. Sun City Holding Co. v. Schoenfield, *supra*.

In this case the bill alleges that certain misrepresentations were made by a real estate broker to induce the purchaser to buy two lots in a subdivision. These misrepresentations are charged to have been that certain streets "would be" paved, sidewalks "would be" laid, water mains and water system "were to be" installed, that a complete lighting system "would be" installed, gas mains "were to be" laid, proper dredging of the Florida East Coast Canal for a yacht basin "would be" made, that a hotel "would be" completed and opened to the public within five months, that Marshall Field & Co. were making preparations to build a large arcade office and business building thereon, etc., and that complainants "relying on said representations and believing them to be true and while acting thereon, were induced to enter into" the agreement to purchase the lots in question.

The allegations, as charged, were not substantiated by the evidence to such an extent as to comply with the rule authorizing rescission and cancellation of contracts for matters not going to and forming a part of the consideration as distinguished from the inducement for making such an agreement. The Chancellor, as we have pointed out, so found, and we are not at liberty, on this record, to disturb his findings as not being supported by the evidence.

In a similar case decided by the Supreme Court of Alabama, it appeared that lands were purchased for use in a business requiring railroad connections, and the vendor being advised of such purpose, said he was about to

build a belt line railroad which would pass within five hundred feet of the premises. The Court held that such a representation was a mere statement of future intention and said (Birmingham Warehouse & Elevator Co. v. Elyton, 93 Ala. 549, 9 So. 235):

"A promise, strictly speaking, is not a representation. The failure to make it good may give a cause of action, but it is not a false representation which will authorize the rescission of a contract like the present. The making of a promise and having no intention at the time of performing it, constitutes a fraud for which a contract may be rescinded."

In another case from West Virginia (Buena Vista Co. vs. Billmyer, 48 W. Va. 382, 37 S. E. 583), wherein it appeared that the president of the vendor company stated that his company would complete a factory then in course of erection and would within six months build seventy-five houses on lots in the vicinity, the Court said:

"He made no representation as to a material existing fact, but simply said the company would guarantee that certain future things would be done. He believed it and had good reason therefor. Men of means hastening to be rich gathered around seeking investments. They were buying lots at fancy prices. He had the fever. They caught it, and it reacted upon him. As they invested, he became more feverish, and he imagined that all the inflated plans of his company were bound to succeed. He cherished not a single doubt of it, and had no hesitancy in saying so. He was not trying to commit fraud, but was trying to get rich and have all others do likewise. The millennium was about to dawn at Buena Vista, and he wanted everybody to enjoy it. How can we say his statements were fraudulent? He did not know they were true, but thought they would come true. Nay he was sure they would. Defendant heard him, believed

him and invested. Deluded himself, he deluded others. Now, if he had made a false statement as to any existent fact, whether he knew it to be true or not, and had thereby misled the defendant into the purchase of the lots, then the company would have been liable. If he had said the company had so many millions of dollars to spend, that the lots were underlaid with gold, that a complete steel plant had been contracted for and that a contract for the building of seventy-five houses had been made, and these statements or any of them were false, then the company would have been liable, for this would have been the false statement of an alleged fact, and not mere opinion of belief. But he gave nothing but the great expectations of the company which he said it would guarantee. The defendant asked for none of the facts on which these expectations were founded. If he had he could have formed his own opinion. He relied on the verbally guaranteed opinion of his informant, without seeking the foundation therefor. Nor had his informant any sources of information not equally open to him. It is true he was president of the company, but if he had inquired, he might have found out all the facts on which the president's belief was founded, and become filled with all the superior knowledge he possessed. The plea alleges that the means of information were not equally open to the defendant, yet it is not alleged how they were closed to him, for there is no allegation that any information he sought was refused him. The plea as a whole is to the effect that the president assured him what the company expected to do in the future, and because he trusted him be believed the promises would come true. It is impossible to say that such representations were fraudulent, although defendant was induced thereby to purchase the lots. He banked on another man's opinion and lost.''

We are convinced that such is the situation here and

that there was no error in the final decree dismissing the bill of complaint.

As to the alleged errors in sustaining special demurrers to certain parts of the bill it is sufficient to point out that the parts eliminated were not consistent with the cause of action attempted to be set up for relief, and for that reason, it was proper to sustain the demurrers.

A decree in equity will be affirmed where it appears from an examination of the entire case after it has gone to final hearing and been decided on the merits, that the errors complained of as to matters of pleading and procedure have not resulted in a miscarriage of justice. Lake Mable Development Corp. v. Bird, 126 So. 356, 99 Fla. 253.

Decree affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.