EFFIE SMITH NICHOLS, joined by her husband, J. C. NICHOLS, *Appellants,* vs. THEODORE BODENWEIN, D. S. MARSH, JR., et al., *Appellees.*

146 So. 86, 659.

Opinion filed October 18, 1932.

Opinion rehearing filed February 11 and March 14, 1933.

26

*Robert J. Boone,* Attorney for Appellants.

*James R. Cooper, Copeland & Therrell,* Attorneys for Appellee;

*D. S. Marsh, Jr., L. S. Julian* and *Shutts & Bowen,* Attorneys for Appellee C. R. Dashiell;

*Miller, McKay, Dixon & DeJarnette,* Attorneys for Appellee, John G. McKay.

DAVIS, Commissioner.—The appellants, whom we will refer to as complainants, filed their bill of complaint against Theodore Bodenwein, D. S. Marsh, Jr., Lee M. Rumsey, Jr., Luther Gross, Administrator with the Will Annexed of Wilfred Sellers, deceased, William M. Miller, Jerome Cherbino, C. R. Dashiell, J. H. Johnston, W. A. Chaplin, Gilbert H. Chaplin, R. L. Kilby, Lee Rumsey, Sr., Edwin M. Simpson, John G. McKay and Alton Port Commercial, Inc., whom we will refer to as defendants, and therein alleged that on or about the 16th of June, 1925, the defendants Bodenwein, Marsh, the Rumseys, Sellers, Miller, Cherbino, Dashiell, Johnston and Wm. H. and Gilbert Chaplin organized a syndicate for the purchase of certain lots in Ocean Beach Subdivision Number 3, Miami Beach, Dade County, for a consideration of approximately $600,000.00; that the said defendants agreed to subdivide said lots into smaller lots, streets and terraces and that such subdivision should be known as Alton Port Commercial subdivision; that they used a plat, a photostatic copy of which is attached to the bill of complaint as Exhibit ''A,'' to make sales and recognized it as a plat of said subdivision, but that the same was never approved as required by law; that the defendants or their agents, servants and employees on or about July 3, 1925, falsely and fraudulently represented to complainants the blue prints of the plat,—

''(a)   To be a true and exact plat of the subdivision known as Alton Port Commercial, giving the correct size and correct location of certain lots and streets which are hereinafter described;

(b)   That upon the representations that the said property belonged to the defendants or one of them and that the plat or blue print heretofore described as Exhibit ''A'' was a true and correct blue print and plat of said subdivision;

(c)   That it was in fact a subdivision located in Dade

County, Florida, and known as Alton Port Commercial;'' that upon such representations the defendants sold to the complainant Effie Smith Nichols, certain lots in said subdivision, which were represented to have a total frontage of fifty feet facing East on Alton Road and West on Port Avenue, well knowing that such plat had not been approved and filed for record, as provided by law, and that there was no such street as Port Avenue, nor certain numbered terraces in said subdivision, and that they knew that said representations were false and untrue and that they were made for the purpose of deceiving said complainant and with the intention that they be relied upon; that the said complainant believed and relied upon said representations to her damage, having no knowledge of their falsity. It was further shown that complainants also fraudulently represented that there ''existed a corporation known as Alton Port Commercial, Inc., which was duly incorporated under the laws'' of Florida, that said corporation had a marketable title to the property and that the said lands were free of encumbrance, or, if there were encumbrances thereon, they consisted of long-time mortgages with proper release clauses for each lot, and that it had lawful right to sell and convey the same; that on July 3, 1925, no such corporation had been incorporated in Florida; that on July 14, 1925, Letters patent was issued by the Secretary of State of the State of Florida to John G. McKay, Edwin M. Simpson and Lee M. Rumsey, Jr., but that such Letters patent, charter and affidavit by the Treasurer showing that ten per cent. of the capital stock of said corporation had been paid were not filed and recorded in Dade County where the principal office and place of business of the corporation was located, until August 7, 1925, and that the Treasurer's affidavit was not filed with the Secretary of State until August 7, 1925; that an attempt was made to deed property to the ''Alton Port Commercial,'' a corpora-

tion on July 16, 1925, and not to "Alton Port Commercial, Inc.," a corporation, but that the deed was void because the property was described as being lots in Ocean Beach, Florida, Number 3, subdivision, without stating that they were in Miami Beach of Dade County; that pursuant to such representations, and relying thereon, the said complainant Effie Smith Nichols, and Gilbert H. Chaplin, one of the defendants, as joint purchasers, on July 3, 1925, entered into four certain written contracts, with "Alton Port Commercial, Inc.," a corporation, for the purchase of said lots on the installment plan with a down cash payment, copies of said contracts being attached to the bill as a part thereof; that on March 13, 1926, the said Gilbert Chaplin assigned to the said complainant his interest in said contracts, at which time the said complainant had no notice or knowledge that a fraud had been perpetrated upon her; that the defendants as a part of the consideration for the purchase of said lands agreed to construct suitable water and electric light connections for the same, complete and grade streets in the said subdivision, and dredge a channel twenty feet from the bay front bulkhead line, one hundred fifty feet in width and twenty feet deep, the same to be completed eighteen months from date of agreement; that said contract was breached by the defendants in that they did not make the improvements within a reasonable time from the making of the contracts, and did not complete the said channel within the agreed time; that the complainant, Effie Smith Nichols refused to make deferred payments, that she was induced to make the said contracts through fraud, that the Alton Port Commercial, Inc., did not have title to the property, that it had put it out of its power to fulfill said contracts, having dissipated its assets in an unlawful manner, and because it had breached its contract as shown by the bill; that when the second payment became due said complainant was ready, willing and

able to comply with her contract, but defendants were in default upon the mortgage given upon the entire subdivision for the purchase price thereof.

It is alleged further that prior to the incorporation of Alton Port Commercial, Inc., a syndicate of the defendants was formed, each of them contributing to a common fund for making the initial cash payment for the land comprising the alleged subdivision, and that the names of the members of the syndicate and the amount paid in by each of them is as follows:

"Theodore Bodenwein.............$12,500.00
D. S. Marsh, Jr.................. 12,500.00
Lee Rumsey ...................... 12,500.00
Wilfred Sellers ................. 12,500.00
William M. Miller ............... 25,000.00
Jerome Cherbino ................ 25,000.00
C. R. Dashiell ...................12,500.00
J. H. Johnston .................. 25,000.00
W. A. Chaplin and Gilbert Chaplin 25,000.00;''

that when the corporation was organized stock was issued to said members of the syndicate for the respective amounts opposite their names, and that the aggregate amount thereof comprised the entire assets of the syndicate and of the corporation, and that practically all of it was paid on the purchase price of the land to be subdivided; that the said corporation gave to the vendors a mortgage upon the land to secure the sum of $450,000.00, payable in installments, but a small portion of which was paid on the note first maturing; that interest had been paid only to December 16, 1925, that a bill was filed on February 15, 1927 to foreclose the said mortgage, and that a final decree of foreclosure had been entered thereon on July 1, 1927; that during the summer and fall of 1925, the entire subdivision was sold, and that approximately $400,000.00 in cash had been received therefor; that instead of using the moneys so received in carrying out the terms of their said contracts, it was wrongfully diverted by re-paying to each of the de-

fendants who had contributed to the purchase of said lands, or to expenses of organization, the full amount of his investment.

It was further shown that the said corporation holds notes and obligations representing a large amount for the deferred payments given by purchasers of lots in said subdivision, among them being the notes of complainant, Effie Smith Nichols; that she has not received benefit or title from the money paid on the lots purchased by her and that the notes given by her should be surrendered and cancelled; that they cannot designate the various parties who were officers, stockholders and directors in the said corporation at the various times, but that at the time of its organization John G. McKay was its President and Treasurer, Edwin M. Simpson its Vice-President and Lee M. Rumsey its Secretary, and that the same parties composed the Board of Directors; that at the time of the purchase of the property on June 16, 1925, "and prior to the actual organization of the corporation, Jerome Cherbino was acting President, Lee M. Rumsey, Sr., as Vice-President, and Lee Rumsey, Jr., as Secretary, and D. S. Marsh, Jr., as Treasurer, and that the same parties composed the Board of Directors; that at the time of the filing of this bill, W. A. Chaplin is President, R. L. Kilby is Vice-President and James A. Bissett is the Secretary and Treasurer, and that the same parties compose the Board of Directors;" that, as a part of the scheme to wipe out and dissipate the assets of the Alton Port Commercial, Inc., Jerome Cherbino, its then President, was paid the sum of $129,000.00 as a commission on account of purchase of the property, that said corporation is insolvent, and that complainants offer to do equity and execute proper "releases and satisfactions of the contracts of July 3, 1925" upon defendants refunding the money paid by complainant Effie Smith Nichols, interest, etc.

There is a prayer for the cancellations of the said contracts, and of the notes given by the said Effie Smith, who at the time of filing the bill was Effie Smith Nichols, for a decree awarding complainants all damages that may be shown to exist, and in addition the sum of money paid by the complainant Effie Smith Nichols; for an accounting (a) of the moneys paid out by it to stockholders, officers, etc., (b) for the purchase of land, payment of interest and taxes, (c) and commissions paid or received on the purchase and sale of land; that the syndicate members be decreed to be liable to complainant Effie Smith Nichols, and that they be required to pay the amounts paid by her on said lots; for other relief therein specifically prayed for and for general relief.

Defendants Lee M. Rumsey, Jr., William Miller and W. A. Chaplin were not served with process and the cause was dismissed as to them upon motion of complainants. A plea in abatement by Luther Gross as Administrator of the estate of Wilfred Sellers, deceased, with Will Annexed, was sustained; defendants Theodore Bodenwein, J. H. Johnston and Edwin M. Simpson were served by publication only and did not appear. Decrees pro confesso were entered against Theodore Bodenwein, Jerome Cherbino, J. H. Johnston, Gilbert H. Chaplin, R. L. Kilby, Lee Rumsey, Jr., Edwin M. Simpson and Alton Port Commercial, Inc. Answers were filed by John G. McKay, C. R. Dashiell and D. S. Marsh, Jr.

The cause was referred to a Master to take testimony and report back to the Court his findings of law and of fact.

The Master reported that Lee M. Rumsey, Jr., William M. Miller and W. A. Chaplin were never served with process either personally or by publication, and recommended a dismissal of the bill as to them; that the defendant Luther Gross, Administrator With the Will

Annexed of Wilfred Sellers, deceased, file a plea in abatement which was sustained by evidence and that the bill should be dismissed as to said defendant; that the covenant of the vendor to make improvements and the covenant of Effie Smith Nichols to purchase said land were dependent and that no steps to install water and electric light connections and to complete and grade streets had been taken; that there was a blanket mortgage on the subdivision in question, which mortgage had been foreclosed; that the Alton Port Commercial, Inc., had abandoned the subdivision in question, is insolvent and had ceased operation, and that because of the breach of vendor's covenant complainant Effie Smith Nichols is entitled to have the four contracts rescinded and the notes given in connection therewith cancelled, and also to a return of the money paid by her with interest thereon; that the evidence failed to disclose any such fraudulent representations as would entitle the complainants to rescind the said contracts on the grounds of fraudulent misrepresentations; that a "capital refund" or dividend was declared on August 15, 1925, and each of the stockholders was paid 100 per cent. on his investment as of September 1, 1925; that the contracts for deed in question are all dated July 3, 1925, two of them having been acknowledged on July 29, 1925, and the other two on July 21, 1925, and that duplicate affidavits by the Treasurer of Alton Port Commercial, Inc., that the requisite amount of its capital stock had been paid, were not filed with the Secretary of State and with the Clerk of the Circuit Court of Dade County until August 7, 1925, that the "original incorporators and directors of Alton Port Commercial, Inc., who were officers and directors at the time said four contracts in question were executed, were the defendants John G. McKay, Edwin M. Simpson and Lee M. Rumsey, Jr.," but that Rumsey had not been served and suit had been dismissed as to him,

and that no personal judgment can be entered against Edwin M. Simpson because he was served by publication only; that a personal judgment should be entered against McKay. He also recommended that a personal judgment be entered against Cherbino and Alton Port Commercial, Inc., and that the contracts be rescinded and the notes made in connection therewith cancelled.

Exceptions were filed to certain portions of the Master's report by the complainants, by D. S. Marsh, Jr., and by John G. McKay, severally. The Court in the final decree sustained the exceptions filed by McKay to the Master's report and dismissed the bill as to him. The exceptions of the complainants and of the defendant, Marsh, to the said Master's report were overruled and in all other respects the said report was ratified, approved and confirmed by the Court. The bill was dismissed as to the defendants Luther Gross, as Administrator, etc., C. R. Dashiell, Theodore Bodenwein, Edwin M. Simpson, J. H. Johnson, Gilbert H. Chaplin, R. L. Kilby, Lee Rumsey, Sr., and D. S. Marsh Jr., and the Court decreed that the said contracts and the notes executed by the complainant Effie Smith Nichols in connection therewith, be rescinded, cancelled and annulled and that said complainant ''do have and recover of and from the defendants Jerome Cherbino and Alton Port Commercial, Inc., a Florida corporation, the sum of TWENTY-EIGHT THOUSAND SIX HUNDRED SIXTY-SIX & 65/100 DOLLARS,'' with interest thereon.

Upon an appeal from the final decree, the complainants have assigned as error, the sustaining of the exceptions of John G. McKay to the Master's report, the dismissal of the bill as to each of the following named defendants, severally: John G. McKay, C. R. Dashiell, Gilbert H. Chaplin, R. L. Kilby, Lee Rumsey, Sr., D. S. Marsh, Jr., and in failing to enter judgment against D. S. Marsh, Jr., C. R. Dashiell, and John G. McKay, for the full amount of the

judgment entered against Jerome Cherbino and Alton Port Commercial, Inc.

The object of the bill is not limited to a rescission and cancellation of the contracts and notes. It also partakes of the nature of a creditor's bill, but as a creditor's bill it cannot be maintained for the reason, if none other, that it does not appear that complainants had obtained a judgment at law, or that a suit at law instituted by them was pending against the defendants, or any of them. Sec. 5035, Compiled General Laws, 1927; B. L. E. Realty Co. vs. Mary William Co., 101 Fla. 254, 134 So. 47. See also George E. Sebring Co. vs. O'Rourke, 101 Fla. 885, 134 So. 556; Willis vs. Fowler, 102 Fla. 35, 136 So. 358.

Under the pleadings a rescission of the contracts and cancellation of the notes given by Effie Smith Nichols must be justified, either upon the ground of fraud, or, upon breach of contract on the part of the vendor or vendors.

We have repeatedly held that any false representations of a material fact, made with knowledge of its falsity and with intent that it shall be acted on, entitles party relying thereon and deceived thereby to avoid contract or maintain action for damages sustained. (Day vs. Weadock, 101 Fla. 333, 134 So. 525; Nixon vs. Temple Terrace Estates, Inc., 97 Fla. 392, 121 So. 475); that misrepresentation to constitute ground for rescission of contract must have been an inducement thereto (Pryor vs. Oak R. C. Corp., 97 Fla. 1085), and that the nonperformance of a mere promise to do something in the future, without fraudulent intent, in consideration for the execution of a contract, will not ordinarily be sufficient to authorize its rescission. Hendricks vs. Stark, 99 Fla. 277, 126 So. 293; N. L. E. Realty Corp. vs. Farrar, 101 Fla. 1467, 136 So. 441.

Without reviewing the testimony we will state that it has not been clearly shown here that the finding of the Master, which was approved by the Chancellor, that the

evidence fails to disclose any such fraudulent representations as would entitle complainants to rescind the said contracts, is erroneous.

The Master found that the covenant of vendor to make the improvements called for by the contract and the covenant of the vendee Mrs. Nichols, to pay were dependent covenants, that the first deferred payment on said contracts became due six months after July 3, 1925, and that Alton Port Commercial, Inc., had not commenced work of installing water and electric light connections and grading streets, and that there are no streets or water or light connections in the subdivision referred to in the contracts. This finding of the Master was also approved by the Chancellor.

None of the appellees have filed cross-assignments of error. We are, therefore, relieved of the necessity of inquiring whether or not the law or evidence warrant a rescission and cancellation of the contract and notes, and also from determining whether or not the complainants should have been barred from maintaining the suit upon the principle of estoppel, or because of laches. Upon breach by the vendor or vendors, the complainants had the right, at their election, to ask for a rescission and cancellation of the contract, and when a Court of equity assumes jurisdiction for one purpose, it will grant full relief. John Ringling Estates vs. White, 105 Fla. 581, 141 So. 884. See also Leesburg St. Bank vs. Lyle, 99 Fla. 535, 126 So. 791.

In the instant case the complainants are not satisfied with a rescission and cancellation of the contracts and notes given for a part of the purchase money. They also want a return of the initial or first payment made on each of the contracts. It is their contention that a personal judgment should have been entered against Marsh and Dashiell, both of whom were before the Court and had answered the bill, on the theory that the contract with Mrs. Nichols was en-

tered into prior to the creation of the corporation and prior to the time when Alton Port Commercial, Inc., qualified to do business in Florida by filing with the Clerk of the Circuit Court and with the Secretary of State of the State of Florida, duplicate affidavits by its treasurer that not less than $1,000.00 of the capital stock of the corporation had been paid in money, (its stock being without par value), and that in consequence thereof, those interested in the enterprise should be held as joint adventurers or as promoters of a corporation, or as members of a general partnership under the Florida statute (Section 5983 (4054) Compiled General Laws 1927). They also contend that a personal judgment should have been entered against John G. McKay because he was an officer of the corporation, having been named in the corporate charter as its President.

The purchase of the land comprising the Alton Port Commercial, Inc., Subdivision, was effected through Jerome Cherbino, the prime mover in the transaction. The evidence discloses that both Marsh and Dashiell, in response to telegrams sent by Cherbino, forwarded certain moneys, the former sending $25,000.00 (half of which he says was for himself and half for another), and the latter $12,500.00 each of the telegrams reads as follows:

"Just Purchased Another Piece of Bay Front and Expect to Make a Quick Killing by Subdividing and Selling off Stop A Similar Proposition to Aquarium Property Stop Only Taking in a Few and if You Care to Come In for Either Twelve Thousand Five Hundred or Twenty Five Thousand Will be Glad to Have You Stop If You Wish to Join Will be Necessary to Wire Money Through Your Bank as Immediate Settlement Demanded Will be in Chicago Next Week Everything Going Great."

To each of these two parties Cherbino sent a receipt which stated:

"Received of C. R. Dashiell, the sum of ($12,500) Twelve Thousand Five Hundred Dollars, being payment for part ownership in Lots 32 to 39 inclusive, of Block

111, Ocean Beach No. 3——the total purchase price of said property being Six Hundred Thousand Dollars, payable One Hundred Fifty Thousand Cash, and balance in Six Semi-Annual payments with Interest at 8 per cent.

"It is understood and agreed that a Holding Com-company will be immediately organized with Capital of Seventy Two to 80 shares of no-par Common Stock and that when said Company has been duly organized the said C. R. Dashiell is to receive 5½ shares of the Capital Stock.        (Signed) Jerome Cherbino

Jerome Cherbino, Trustee.''

Both Marsh and Dashiell were sworn as witnesses in the case, and while each of them testified in substance that he bought stock in a corporation, each of them made it clear that when he made the remittance of money to Cherbino, whatever arrangements Cherbino made with reference to the property would be perfectly satisfactory to him; that he had made other investments with Cherbino and that he, in this deal, was relying upon Cherbino's judgment.

The contracts, of which rescission is sought, purport to have been made with a corporation under the laws of Florida, and were signed "Alton Port Commercial, Inc., by Jerome Cherbino, President, Attest: Lee M. Rumsey, Jr., Secretary.''

The question therefore arises: Are those who contributed money for the purchase of the land comprising the subdivision for the purposes of re-selling it at a profit, liable as co-adventurers or as co-promoters of a corporation, to Mrs. Nichols as a contract holder for lots in the subdivision purchased by Cherbino prior to the creation or qualification of the corporation, in the manner provided by law, for the transaction of business, stock in the corporation having been subsequently issued to them in proportion to their share in the fund devoted to the purchase of the property?

This Court has said: "The settled general rule is that contracts made for a corporation by its promoters prior to

its creation are not enforceable by or against the corporation after its organization.'' Sumner-May Hardware Co. vs. Scally, et al., 66 .Fla. 93, 62 So. 900. We have also approved the following:

" 'An agent will be held personally liable where he professes to enter into a contract for a principal who is at the time non-existent, or legally incompetent or irresponsible, even though in thus entering into the contract he acts in good faith, as an agent assuming to contract for a principal must make a contract binding upon some principal, or else he himself is liable. In accordance with this rule it has been held that an agent is personally liable where he professes to enter into a contract on behalf of an unincorporated association, club or committee, or on behalf of a corporation, before its incorporation'.''

I. W. Phillips & Co. vs. Hall, 99 Fla. 1206, 128 So. 635-7; Bryce vs. Bull, decided at this Term, 106 Fla. 336, 143 So. 409.

Upon this theory the lower court committed no error in adjudging Cherbino liable for the amount of money that was paid by Mrs. Nichols on said contracts. We are of the opinion that it was shown that Cherbino also acted for his alleged associates in the sale of the lands comprising the subdivision, or a part of them, it being for their mutual benefit. That being the case, it follows that they were interested therein as joint adventurers, (Proctor vs. Hearne, 100 Fla. 1180, 131 So. 173; Willis vs. Fowler, 102 Fla. 58, 136 So. 358; Brice vs. Bull, supra), and as such joint adventurers, they were all bound by the contracts with Mrs. Nichols, though Cherbino's associates were at the time unknown to Mrs. Nichols, there being nothing before the Court to show that Cherbino exceeded his authority or had no power to bind his associates thereby. See authorities last cited and 33 C. J. 872.

The telegrams to Marsh and Dashiell, a copy of which is set out herein, and the remittances of cash in response

thereto, clearly indicate an intention on the part of Cherbino, Marsh and Dashiell to create the relation of joint adventurers in the proposed scheme and the subsequent creation of a corporation for the purpose of handling the scheme, and the issuance of the corporation's stock certificates to each of them for his proportionate share of the total capital invested, does not relieve them of any liability that attached to them as joint adventurers before the corporation was created and authorized to transact business in Florida. The transcript reveals, that when the certificates of stock in the corporation were received by Marsh and Dashiell, they, at the same time received checks for the full amount they had contributed to the venture. These remittances were first referred to in the minutes of the corporation as a ''cash refund of their capital,'' but the minute was on June 24, 1926, at a stockholder's meeting changed so as to make them appear as a ''dividend of 100 per cent.'' We feel that equity would fail in its mission if it should refuse to grant relief sought against those who permit and authorize a juggler in real estate deals, as Cherbino seems to have been, to act for them in preying upon a trusting, though perhaps incautious, public, under circumstances as shown to have existed in this case.

It is our conclusion that error was committed by the Chancellor in finding that no liability attached to those associates of Cherbino who were before the Court by having been personally served with process and against whom decrees pro confesso were entered, or were shown by the evidence to be in the same attitude with reference to the venture as were Marsh and Dashiell, and that the Court also erred in dismissing the bill as to such parties and in not entering a decree adjudging them to be personally liable to the Complainant Mrs. Nichols.

We will now take up the assignment of error dealing with that phase of the decree which dismissed the bill against

John G. McKay. In his answer to the bill this defendant alleged that at the time of the incorporation of Alton Port Commercial, Inc., he "was President; that he was employed by the persons interested in the development and sale of the property involved in this suit, in his capacity as attorney at law, to effect the incorporation of Alton Port Commercial, Inc., that this defendant became an incorporator merely for purposes of convenience in the execution of the necessary papers and documents connected with the formation of the said corporation; that immediately thereafter, this defendant resigned as President and Treasurer of said corporation and withdrew from all participation in said corporation, either as officer, director, stockholder or otherwise; that this defendant was and is not a party to any of the transactions alleged in the bill of complaint and knows nothing thereof; that his sole connection with any of the other defendants in this cause is as herein set out."

Section 5983 (4050) Compiled General Laws 1927, provides that if any corporation created under the general law shall transact any business before complying with the requirements therein enumerated, its officers and directors "shall be personally liable for all of the corporation debts as if they were members of a general partnership."

Copies of the Letters patent and articles of incorporation were admitted in evidence and from these it appears that the proposed articles of incorporation was signed by McKay on June 26, 1925, and that it, together with written notice that application would be made on July 6, 1925, for Letters patent incorporating Alton Port Commercial, Inc., was filed with the Secretary of State of the State of Florida, and that Letters patent was issued on July 16, 1925. It is also shown that duplicate affidavits made by Lee M. Rumsey, Jr., were filed with the Clerk of the Circuit Court and with the Secretary of State on the 7th day of August, 1925. Formerly, the statute declared that stockholders should be

personally liable for corporate debts contracted before the corporation qualified under the statute to transact business, and under the statute as it then existed, this Court said that the statute was neither remedial nor penal ''but simply continues the contractual obligations of persons who, acting through their agents, the officers of a corporation not yet authorized to transact business, were liable on their contracts as if they had not intended to do business under the charter;'' that ''the effect of the statute forbidding the corporation from transacting any business until the requirements therein mentioned are complied with is to continue the liability of the incorporators and stockholders as a voluntary association of individuals in the nature of a co-partnership.'' Winfield vs. Truitt, 71 Fla. 38, 70 So. 775. In Cook vs. J. I. Case Plow Works, 85 Fla. 421, 96 So. 292, the Court said:

> ''From the first to the last of the cases this court has consistently held the obligation of stockholders under this statute to be contractual.''

There is an absence of proof that McKay at any time sustained a contractual relation with Cherbino and his associates in the proposed venture, or that he was an officer at the time the property was deeded to the corporation. It does not appear that Cherbino or any of his associates, who were personally served with process, were interested in any way in Alton Port Commercial, Inc., at the time it was incorporated. For us to come to the conclusion that McKay, prior to the issuance of Letters patent, knew that the name of the proposed corporation had been used in making the contracts in question, we would have to base such conclusion upon conjecture. There is nothing in the transcript upon which it could be grounded. Here we have a case where contracts were made by one of several persons engaged as joint adventurers for the benefit of all under a name which about that time was being used by McKay,

Simpson and Rumsey, Jr., in the formation of a corporation bearing the same name, and for which the State issued Letters patent in due course, and there is no showing that McKay, Simpson and Rumsey, Jr., had notice that such name was being used by such joint adventurers. It is true a deed purporting to convey the property described in said contracts was executed to "Alton Port Commercial," a corporation, and a mortgage executed for and on behalf of the corporation by officers whose names do not correspond with the names of those designated as officers in the charter of the defendant corporation, was given in return as security for a part of the purchase price of the property, and that the deed, notes for deferred payments and mortgage were dated June 16, 1925, but which deed and mortgage were not acknowledged until August 1, 1925. The minutes show that on July 31, 1925, McKay resigned as President and also as director of the corporation, and asked to be relieved of his subscription, and that a resolution complying with his request was then adopted by the corporation.

We cannot presume that the officers of "Alton Port Commercial, Inc.," at the time of the issuance of the Letters patent were associates of those who were interested in the making of the contracts in question. It was feasible for the joint adventurers to take over the corporation formed by McKay, Simpson, and Rumsey, Jr., and then have the deed conveying the property delivered to the corporation. The burden was on the complainants to show a contractual obligation between McKay and Cherbino, Marsh and Dashiell, and this burden was not sustained by the complainants.

It was not necessary for the proof to show that all of the persons named in the bill as being interested in the joint venture, were co-adventurers. The lack of necessary proof in that respect will not justify a Court of equity in denying

relief prayed for as against those clearly shown to have been jointly interested in the venture.

It must be borne in mind that the power of a Court of equity to grant relief is not circumscribed by any fact or technical rule. The Court has a broad discretion in forming its decrees, in order to adapt the relief to the circumstances of particular cases. The primary object of a decree is to reach the ends of justice, and equity procedure is usually elastic enough to accomplish this result. Generally, relief may be granted in equity against some defendants and denied as to others. The rule that a judgment must be rendered against all defendants charged with a joint liability, or none, in actions at law, has no application in suits in equity. See 21 C. J. 660-666; 10 R. C. L. 557.

It follows that the bill was properly dismissed as to McKay.

The decree of the lower Court is reversed and the cause is remanded with directions to enter a decree in accordance with the views herein expressed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, Extra Session, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that decree of the lower Court be and the same is hereby reversed and the cause is remanded with directions to enter a decree in accordance with the views herein expressed.

BUFORD, C.J. AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

---

## ON REHEARING.

BIRD, Circuit Judge.—We are unable to agree with the earnest contention of counsel for appellees Marsh and Dashiell that inasmuch as the contract was signed by the parties in a corporate name and the contract accepted by

appellant, that she dealt with them as a *defacto* corporation she is estopped to deny the corporate existence. First it is against public policy of this State, as expressed in the statute, for individuals to do business as a corporation without complying with the corporation laws; the statute imposes a penalty of partnership liability upon the incorporators, directors and officers for so doing, and the contracts so entered into are not enforceable either by or against the corporation. Sumner-May Hardware Co. vs. Scally, et al. 66 Fla. 93, 62 Sou. Rep. 900. Second: There is no showing that appellant had any knowledge of the non-existence of the pretended corporation at the time she entered into the contract and paid her money or did any act which appellees acted upon that worked an estoppel against her.

It is apparent from the record that appellees, Cherbino, Dashiell, Marsh, and others, purchased the real estate described in the bill for the purpose of subdividing and re-selling, and that they each contributed to the original purchase price, or the first payment upon the property; and that before any tangible effort was made to incorporate, sold practically the entire tract. They were not incorporated at the time of the sale of the same and at the time appellant paid her money; that the appellees received the profits from such joint adventure equal to one hundred per cent. of the capital invested, within less than sixty days; and that they have retained the fruits of the joint adventure and not restored, or attempted to restore, the money paid by appellant. No principle of equity is more firmly established than that "when an agent acts for his principal and the principal accepts the fruits of the agent's efforts, the principal must be deemed to have adopted the methods employed and he may not, even though innocent, receive the benefits and at the same time disclaim responsibility for the means by which they were acquired." Chase

v. Sullivan, 99 Fla. 202, 126 Sou. Rep. 359; Love v. Brown Development Co., 100 Fla. 1373, 131 Sou. Rep. 144.

Appellees Cherbino, Dashiell, Marsh, and others, purchased the property in June, 1625; on the 3rd day of July, 1925, they, pretending to act as a corporation, sold four lots in question to appellant and received and retained her money. No efforts were made to incorporate until the 6th day of July, 1925, when notice of application for letters patent was given. The company was authorized to do business on the 7th day of August, 1925. In the meantime, practically the whole tract of land purchased had been resold, and on the 15th day of August the named appellees, and the others, received benefits of such joint adventure equal to one hundred per cent. of the capital invested. These moneys were acquired through the joint enterprise and not by the corporation.

It is axiomatic that since the named appellees did not speak when their interests commanded them to be silent, they cannot now be heard to speak when equity and conscience require them to be quiet.

For the reasons set forth herein, and in the original opinion filed in this case, such original opinion is adhered to.

DAVIS, C.J. AND WHITFIELD, TERRELL AND BUFORD, J.J., concur.

---

### ON PETITION FOR FURTHER REHEARING.

BIRD, Circuit Judge.—We have again reconsidered this cause on the petition of C. R. Dashiell, one of the appellees, for rehearing to the opinion filed on the 18th day of October 1932, and the opinion on rehearing filed on the 11th day of February, 1933, and are of the opinion that the two opinions filed in this cause reach a fair and legal determination of this cause.

We delete from the opinion filed on the 11th day of

February, 1933, the word "incorporators" in the first paragraph of said opinion.

It appears from the record that the appellants Dashiell and Marsh, and their associates, in the joint adventure, on the 3rd day of July, 1925, when the contract is dated, and on the 27th day of July, 1925, when it is contended the money was actually paid, were doing business as joint adventurers and not as a corporation. The named appellees, and their associates, did not take over the corporation known as the Alton-Port Commercial, Inc., until the 15th day of August, 1925, which corporation was formed and the letters patent issued to John G. McKay, Edward M. Simpson and Lee M. Ramsey, Jr., the said John G. McKay is named as President and Treasurer, Edward M. Simpson is named as Vice-President, and Lee M. Ramsey, Jr., as Secretary, and each are named as directors. These parties turned the corporation over to the said appellees and their associates on the 15th day of August, 1925, and at the time the contract was entered into or the money paid, the parties to whom the money was paid and who entered into the contract appear to have no interest in the corporation then in process of formation. We therefore again adhere to our former opinion and the petition for rehearing is denied.

Motion for recall of Mandate and Petition for a further rehearing denied.

DAVIS, C.J. AND WHITFIELD, TERRELL AND BUFORD, J.J., concur.