312 So.2d 538 (1975)
E.T. RENNOLDS, Jr., and Mary Lee Rennolds, His Wife, Appellants,
v.
Mattie L. RENNOLDS and Edwina R. Barlow, Appellees.
No. 73-1078.
District Court of Appeal of Florida, Second District.
May 14, 1975.
*539 Julian D. Clarkson of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellants.
G. Gordon Harrison of Pavese, Shields, Garner, Haverfield & Kluttz, Fort Myers, for appellees.
McNULTY, Chief Judge.
Appellants appeal a final judgment which rescinded and cancelled a deed conveying to the appellant E.T. (Eddie) Rennolds, Jr., his father's homestead. We reverse.
The undisputed operative facts are: In 1955 appellant "Eddie" Rennolds' father bought a homestead, taking title in his sole name, and built the family home thereon. At the time the house was built the only two daughters had married and moved away. Eddie, the only son, was then 17 *540 and he and his mother (appellee Mattie L. Rennolds) helped with construction. Thereafter, the father, the mother and Eddie lived together in the home until the events of 1960 which form the backdrop for this action.
During that year the father prevailed upon his wife to join in a deed of the homestead to the son. At that time Eddie agreed with his father that he would support both his parents so long as either lived and that the property would continue to be their home during the rest of their lives. As a consequence, the father and mother then conveyed the homestead to their son by warranty deed on September 16, 1960.
Thereafter, the son continued to live in the homeplace with his parents for over a year, working to provide funds for his parents' support as well as his own. He then entered the military service attaining the rank of PFC with a monthly pay of $84, $40 of which he sent to his parents who used the money to live on.
Eddie's father died April 29, 1962 and Eddie received a hardship discharge from the military because of this, returning home to live with his mother in August, 1962. Eddie went back to work getting a job with a contractor for take-home pay of about $68 a week, which was the sole source of income for himself and his mother. He continued to support his mother for approximately a year and a half with no change in their circumstances.
In January, 1964 the mother, who by then was almost 60, was stricken with a heart attack requiring her to wear a pacemaker. Then, in December, 1964, some two and a half years after his father's death, Eddie married appellant Mary Lee Rennolds.
During the early months of the marriage Eddie's wife and his mother "got along just beautiful." Then problems developed between the two women, culminating in the older woman's decision to move out in July, 1965, "because we couldn't get along and it didn't get any better." The mother first moved in with her own mother at nearby Ft. Denaud and the following year moved to Lakeland to live with Eddie's sister, appellee Edwina R. Barlow.
Eddie's mother continued to live with Edwina for four years. In February, 1970, she asked Eddie if she could move back home and he said yes. She then returned to LaBelle and lived with Eddie and Mary Lee in the property in question until June, 1970, at which time her own mother died and she decided to move back to Lakeland.
In February, 1971, some 11 years after the homeplace had been deeded to Eddie, the mother again returned to LaBelle hopefully to live with him. This time Eddie told her she could not return. She then returned to live with Edwina and was still residing there at the time of the trial herein, August 7, 1974.
Between January, 1964 and May, 1972, Eddie paid $6,436.56 in expenses for his mother's medical care and support, including the cost of three pacemakers. Between the time of his father's death and the time his mother left the home permanently, he also paid the taxes, spent money for repairs to the house and maintained the premises.
Appellees filed this action in three counts on June 21, 1972. The first two counts prayed for rescission and cancellation of the deed, count I alleging fraud and misrepresentation and count II alleging an absence of valuable consideration as required to support the alienation of homestead property. Count III sounded in contract and sought damages for breach thereof. The judgment appealed from is silent as to the specific grounds relied upon, but, as noted, rescission and cancellation were indeed granted. It is patent, however, and the parties so agree, that the relief granted was predicated solely on the allegations of count I, to wit: fraud and misrepresentation. This is necessarily so, incidentally, *541 because significantly the record clearly and undisputedly shows a sufficient consideration for the deed; that is to say, a promise to do and perform certain valuable acts for and during the lives of the promisees. Count II was not established, therefore; no damages were awarded under count III; so our attention must necessarily focus on the matters embraced within count I.
At the outset we point out that rescission and cancellation of a deed is a harsh remedy not generally favored by the courts.[1] Indeed, a court of equity will ordinarily rescind or cancel an instrument only for fraud, accident or mistake and not because of the mere want or failure of consideration.[2] An action for damages at law is usually adequate in the latter instances.
In the particular line of cases with which we are here concerned, however, i.e., those wherein property is conveyed in return for a promise of support, these precepts are recognized, yet rationalized, by our Supreme Court in Collins v. McKelvain,[3] a case very similar to that before us upon which both parties hereto apparently rely. There, a grantor deeded certain property to the grantee upon the latter's promise to support the grantor and furnish her with board, lodging, clothing and necessities for the remainder of her life. After some six and one half years the grantee defaulted and rescission of the deed was upheld, the court saying:
"Where a deed is executed in consideration of an agreement by the grantee to support the grantor, and this agreement is made by the grantee for the fraudulent purpose of securing the deed and without intending to carry it out, and it has this effect, it constitutes a fraud vitiating the conveyance, and equity will set it aside. [Citations omitted.]
"Conduct of the grantee, after accepting conveyance of property, in failing to provide support and maintenance for the grantor, gives rise to the presumption of an abandonment of the contract (to provide support and maintenance for the grantor) and of a fraudulent intent in entering into it and taking conveyance of the property; and relief is given upon this ground rather than upon the right to rescind for failure of grantee to carry out the terms of the contract. [Citations omitted.]" (Emphasis ours.)
We note, too, that the fraud spoken of in that case is predicated upon a presumption which that court said arises from a failure on the part of the promisor-grantee to perform his undertaking.
Parenthetically, on this latter point, it may well be argued here, even conceding that the evidence presented by appellee laid a sufficient predicate to give rise to that presumption, that the undisputed evidence on the part of appellant sufficiently rebutted it. But we don't think it's necessary to decide the case on that point since we are more impressed with the extent of relief granted than with the finding of entitlement to relief in the first place. That is to say, assuming the presumed fraud, we think the court went further than was necessary to do full equity. To further quote from Collins, supra:[4]
"... Relief in equity in this class of cases is not a matter of strict right, but is granted or refused according to whether from all the circumstances, it is just and reasonable in the particular case... ."
*542 Moreover, it's axiomatic, we think, that a court of conscience ought go no further than reasonably necessary to balance fully the equities flowing between the parties. Discretion in forming equitable decrees should be exercised toward adapting appropriate relief to the wrong suffered or as may be reasonably called for by the circumstances of the particular case.[5]Collins, supra, does not speak to this aspect of the problem so, however helpful, we don't think it's controlling.
Here, the original grantor was Eddie's father, the fee owner.[6] To be sure, the mother's joinder in the deed was required to convey the property since it was homestead;[7] but as to her interest conveyed, she merely relinquished an inchoate life estate (her statutory interest in said homestead in lieu of dower, there being lineal descendants in this case[8]) which, of course, would have ripened into a full freehold interest upon the death of her husband in 1962. Assuming a breach of the undertaking on the part of Eddie, therefore, and further assuming the mother is not urging her alternative count III for damages at law (which, as noted, wasn't the basis of the judgment appealed from), the mother can be made whole in equity simply by reinstating her life estate, putting her back into possession and, as Eddie's price for the remainder, specifically enforcing his promise to support her. The court could retain jurisdiction to enforce the provisions of such a support order, which reservation would include the authority ultimately to rescind and cancel the deed after all upon default. Eddie's undertaking as to the father, of course, was fully performed; and it undisputedly appears that to a substantial degree he has also performed for the benefit of the mother notwithstanding a late default in the premises. Under these circumstances, since the mother can adequately be thus made whole otherwise, we think it inappropriate and inequitable that Eddie be totally divested of the fee unless he persists in his breach, concerning which the record is silent in the present posture of the case.
Finally, as to Eddie's sisters, their interest is only contingently ancillary to that of their mother and is not directly predicated on any rights vested individually in themselves. That is to say, there having been a valuable consideration as noted aforesaid for the father's conveyance of the homestead, the deed was not void ab initio; thus no wrongful divestiture of homestead rights in the sisters was effected. If they have any rights now at all such rights are necessarily contingent upon the resolution of the equities flowing as between Eddie and their mother. We have hereinabove resolved those equities leaving the fee in Eddie.
In view whereof, the judgment appealed from should be, and it is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
HOBSON and BOARDMAN, JJ., concur.
NOTES
[1] See Rood Co. v. Board of Public Instruction (Fla. 1958), 102 So.2d 139; Bardwell v. Albertson (1935), 120 Fla. 106, 162 So. 321.
[2] See 5 Fla.Jur. Cancellation, Reformation, and Rescission of Instruments §§ 26, 28.
[3] (1939), 138 Fla. 463, 189 So. 655.
[4] Id. at p. 656.
[5] Cf. Winn & Lovett Grocery Co. v. Saffold Bros. Produce Co., 1935, 121 Fla. 833, 164 So. 681; Nichols v. Bodenwein, 1932, 107 Fla. 25, 146 So. 86, amended, 1933, 107 Fla. 25, 146 So. 659. See also 12 Fla.Jur. Equity §§ 3, 70.
[6] We think the fact that the plaintiff-promisee here was not, technically, the grantor is a distinction without a difference under the rationale upon which we decide this case.
[7] Fla. Const. art. X, § 1, 4 (1885).
[8] See § 731.27, F.S. 1959.