414 So.2d 210 (1982)
Joel S. RATNER, d/b/a the Stereo Corner, Appellant,
v.
CENTRAL NATIONAL BANK OF MIAMI, Appellee.
No. 80-2475.
District Court of Appeal of Florida, Third District.
April 13, 1982.
Rehearing Denied June 16, 1982.
*211 Hall & Hauser and Richard F. O'Brien, III, Gail V. Ferrington and Andrew C. Hall, Miami, for appellant.
William A. Ingraham and Bertram A. Sapurstein, Miami, for appellee.
Before BARKDULL, DANIEL S. PEARSON and FERGUSON, JJ.
FERGUSON, Judge.
Joel S. Ratner appeals from a summary judgment entered in favor of appellee, Central National Bank of Miami, plaintiffs below. Ratner contends that the trial court erred in granting summary judgment and finding Ratner personally liable for $32,756.56 in unauthorized sales drafts which Central National Bank had provisionally credited to the account of The Stereo Corner, Inc., pursuant to a merchant's Mastercharge agreement. The question on appeal is who should bear the loss for forged sales drafts  the bank, the corporation, or the promoter.
The facts are briefly these. On November 3, 1978, Central National Bank of Miami entered into a merchant's Mastercharge agreement with The Stereo Corner, Inc. The agreement was signed, The Stereo Corner, Inc., by Joel S. Ratner. Under the terms of the agreement the merchant warranted each sales draft and agreed to be liable for certain improper sales drafts including those executed or accepted fraudulently. The Stereo Corner, Inc. was not incorporated until July 10, 1979, eight months after the contract was signed. From April 21, 1979 to October 1, 1979, there was a series of deposits in Stereo Corner's account with Central National Bank and a corresponding series of chargebacks against the account by the bank pursuant to Section 674.212, Florida Statutes (1979). Central exercised its right of charge-back when it was unable to collect from the Mastercharge Center of Southeast First National Bank on the sales drafts forged by Stereo Corner's employee. When Central was unable to recoup its losses by charge-back to Stereo Corner's account, Stereo Corner having become insolvent, Central sued Ratner claiming Ratner was individually liable on the contract.
On appeal Ratner contends that questions of fact and law remain as to the following issues precluding entry of summary judgment: (a) whether Central intended to contract with the corporate entity and not hold Ratner individually liable, (b) whether Central *212 Bank breached its statutory duty of ordinary care and is thereby estopped to assert its claim, and (c) whether Central satisfied the conditions of Section 674.212, Florida Statutes (1979), entitling it to a right of charge-back against Stereo Corner's account. We have determined the other issues raised by Ratner to be without merit.
We find no merit in Ratner's contention that there are material questions of fact and law as to whether he can be held personally liable for the corporate debt pursuant to Section 607.397,[1] Florida Statutes (1979). In an affidavit in opposition to the motion for summary judgment, Ratner states that he acted as a promoter for The Stereo Corner, Inc. Ratner contends, however, that he is not liable because his acts as promoter were subsequently ratified by Stereo Corner on July 25, 1979 and, in addition, that The Stereo Corner was a de facto corporation.
We do not determine whether the Corporation Act of 1975, Chapter 607, Florida Statutes (1975), abrogated the doctrine of de facto corporation because there can be no de facto corporation where the filing of papers was not even attempted until eight months after the entity held itself out to be a corporation. See Richmond v. Town of Largo, 155 Fla. 226, 19 So.2d 791 (1944), affirmed, 157 Fla. 837, 26 So.2d 900 (1946). Compare Kansas ex rel. McCain v. Construction Enterprises, Inc., 6 Kan. App. 2d 627, 631 P.2d 1240 (Kan. App. 1981) (no de facto or de jure corporation exists until articles of incorporation are both filed and recorded) with Cantor v. Sunshine Greenery, Inc., 165 N.J. Super. 411, 398 A.2d 571 (Sup.Ct.N.J. 1979) (de facto corporation existed where certificate of incorporation had been mailed to Secretary of State but for unexplained reason was not filed until two days after execution of lease).
The Florida law and general rule is that the promoter of a corporation is liable on his contract although the contract was made on behalf of the corporation to be formed, unless the other party agrees to look to another fund for payment. Bryce v. Bull, 106 Fla. 336, 143 So. 409 (1932); Florida Air Conditioners, Inc. v. Colonial Supply, 390 So.2d 174 (Fla. 5th DCA 1980); Vodopich v. Collier County Developers, Inc., 319 So.2d 43 (Fla. 2d DCA 1975); Bean v. Harris, 212 So.2d 368 (Fla. 3d DCA 1968), cert. denied, 219 So.2d 699 (Fla. 1968); Katz v. Kenholtz, 147 So.2d 342 (Fla. 3d DCA 1962). See, e.g., International Design, Inc. v. Rubin's Franchises, Inc., 247 So.2d 778 (Fla. 3d DCA 1971); § 607.397 Fla. Stat. (1979). The later formation of the corporation and subsequent adoption or ratification of the contract by the corporation does not necessarily release a promoter from liability, but may result in joint liability of the promoter and corporation, absent a novation or express release by the other party to the contract. Vodopich v. Collier County Developers, Inc., supra. See also Fletcher 1 Cyclopedia Corporations § 190 (perm. ed.) (1981 cum. supp.). Moreover, where the promoter does not make it clear that he is acting as a promoter and misrepresents  even if unintentionally  that the corporation is already in existence, thereby causing the other party to enter the contract without knowledge that the entity had not yet been incorporated, the later formation of the corporation and subsequent ratification of the contract, will not by itself, relieve the promoter of liability. See, e.g., Nichols v. Bodenwein, 107 Fla. 25, 146 So. 86 (1932), reh. denied, 107 Fla. 25, 146 So. 659 (1932); Akel v. Dooley, 185 So.2d 491 (Fla. 2d DCA 1966); § 607.397, Fla. Stat. (1979).
In this case, Ratner stated in an affidavit that he was acting as promoter. There is no evidence that Central agreed to look solely to the corporation, and there is no evidence of novation or release of Ratner after the alleged ratification.
We also find no merit to Ratner's second issue on appeal. In his answer below, *213 Ratner pled as an affirmative defense that Central Bank had by its actions either waived its rights or was estopped to assert its claims. We find no legal basis for Ratner's assertion on appeal that breach by Central of its statutory duty of ordinary care pursuant to Section 674.202, Florida Statutes (1979), estops Central from asserting its claim against Ratner. Nor is Section 674.202, supra, a defense to the bank's right to charge-back. It is, instead, the basis for affirmative relief by complaint or counterclaim. See Section 674.212(4)(b), Florida Statutes (1979), providing that a bank's right to charge-back is not affected by failure of bank to exercise ordinary care with respect to any item but any bank so failing remains liable. See, e.g., Wells Fargo Bank v. Hartford National Bank and Trust Co., 484 F. Supp. 817, 822-23 (D.Conn. 1980).
We understand Ratner's third point on appeal to be whether material questions of fact and law remain as to the existence of the right of Central Bank to charge-back to Stereo Corner's account because the trial court failed to determine whether Central Bank satisfied the pre-conditions of Section 674.212,[2]supra, or whether the parties effectively varied the notice requirement pursuant to Sections 674.103(1)[3] and 674.202, Florida Statutes (1979). We find the issue of whether Central Bank had the right to charge-back the unauthorized sales drafts to Stereo Corner's account irrelevant to the issue of Central Bank's right to sue Ratner as individually liable on the contract. See Section 674.212(5), Florida Statutes (1979), providing that "A failure to charge-back or claim refund does not affect other rights of the bank against the customer or any other party."
Affirmed.
NOTES
[1] Section 607.397 provides:

All persons who assume to act as a corporation without authority to do so shall be jointly and severely liable for all debts and liabilities incurred or arising as a result thereof.
[2] The right of charge-back under Section 674.212 exists only if (a) "by its midnight deadline or within a longer reasonable time after it [collecting bank] learns the facts it returns the item or sends notification of the facts," or (b) there has been no final settlement of the item.
[3] Section 674.103(1) provides in part:

The effect of the provisions of this chapter may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care....