ASOCIACION DE TRABAJADORES AG-
RICOLAS DE PUERTO RICO, and

Juan Irizarry Valentin, Individually and
in his capacity as president of Asocia-
cion de Trabajadores Agricolas de Puer-
to Rico and all others similarly situ-
ated, Plaintiffs,

v.

GREEN GIANT COMPANY et al.

Civ. A. No. 74-85.

United States District Court,
D. Delaware.

May 29, 1974.

Sheldon N. Sandler, of Bader, Dorsey
& Kreshtool, Wilmington, Del., David M.
Sheehan, Leverett, Mass. and Mitchell
W. Pearlman, West Hartford, Conn., of
counsel, for plaintiffs.

Paul P. Welsh and James J. See-
ley, III, of Morris, Nichols, Arsht &
Tunnell, Wilmington, Del., for defendant
Green Giant Co.

Lester J. Taufen, Deputy Atty. Gen.
of Delaware, Wilmington, Del., for other
defendants.

## MEMORANDUM OPINION AND ORDER

LATCHUM, Chief Judge.

The plaintiffs instituted this action
seeking an injunction requiring the de-
fendant Green Giant Company ("Green
Giant") to give access for union organi-
zational activities to Green Giant's farm
labor camp located near Middletown,
Delaware.[1] Jurisdiction exists by virtue
of 28 U.S.C. § 1343(3) & (4), imple-
menting the First and Fourteenth
Amendments of the United States Con-
stitution and the Civil Rights Act, 42
U.S.C. §§ 1983 and 1985.

The case is now before the Court on
the plaintiffs' motion for a preliminary
injunction.

---

1. The suit also seeks a declaratory judgment
   under 28 U.S.C. §§ 2201, 2202 that defend-
   ants' action in denying plaintiffs access to

the farm labor camp is constitutionally im-
permissible.

Plaintiff Asociacion de Trabajadores Agricolas de Puerto Rico ("ATA") is a labor organization which desires to solicit memberships in its organization from among the farm workers living at the Middletown labor camp. Plaintiff Juan Irizarry Valentin ("Irizarry"), the interim president of ATA, visited the Green Giant labor camp with other ATA organizers on April 20, 1974 to speak to the workers concerning the benefits of unionization, the goals of ATA and to solicit union membership. Irizarry and his associates upon entering the camp were stopped, informed that they were trespassing upon posted private property and advised either to leave immediately or they would be arrested for criminal trespass. Irizarry and his associates peaceably complied with the order to vacate the premises and this suit followed on April 29, 1974.

Green Giant owns and farms approximately 3,500 acres of asparagus fields in the vicinity of Middletown, Delaware. As an incident to its farming operations, it has seasonably employed each year a large number of farm laborers for planting and harvesting its asparagus crop. Most of the farm workers come to Delaware from Puerto Rico at Green Giant's expense pursuant to the Wagner-Peyser Act, 29 U.S.C. § 49b (1973), and the Statutes of the Commonwealth of Puerto Rico, 29 L.P.R.A. §§ 526–530 (1966).[2] During the asparagus season between March and June, these male farm laborers are housed in Green Giant's Middletown camp which is adjacent to its farming operations.

The camp has an area of about twenty acres. The housing facilities consist of multiple and single dormitory units[3] and related facilities used exclusively by Green Giant's farm laborers. The related facilities include a dining hall, a recreational center containing a television room, such amusements as pinball machines and pool tables, and a small snack bar in which sandwiches, ice cream and sodas, and a few personal items, such as shaving supplies, cigarettes, reading material, sweat shirts and hats are sold exclusively to the camp residents. There is a first-aid station at the camp which a local physician routinely visits on a daily basis at company expense.

The area also includes a park and barn for the storage of farm equipment. The entire housing area is surrounded by a cyclone fence and is posted with "no trespassing" signs. Outside the fenced housing area and adjacent thereto on Green Giant's property is a recreation field, a picnic area, and an office building and small parking lot near the entrance to the housing portion of the camp.

There are no roads, streets, or sidewalks within the camp. There are no schools, stores, libraries, banks, gasoline stations or other business facilities within the camp. Except for a caretaker, there are no year round residents. During the crop season the camp is occupied only by male farm workers; no family units occupy the camp. It simply serves as a temporary housing facility for the male farm workers during the asparagus season.

Fire protection is provided by the Middletown Fire Department. Police protection is provided by the Delaware State and New Castle County Police. In addition, Green Giant has contracted with the Delaware State Police for additional protective services.

Green Giant for a long period of time has limited access to its camp to its farm workers, the workers' invited guests and to licensees of Green Giant

2. For a description of the recruitment method see 27 Puerto Rican Migrant F.W. v. Shade Tobacco Growers Agricultural Association, Inc., 352 F.Supp. 986, 988–989 (D. Conn.1973).

3. The camp has a capacity to house approximately 900 workers. The dormitory units have a capacity of from 5 to 13 workers.

who provide services to the camp.[4] The farm workers' visitors are routinely required to call at Green Giant's office at the camp entrance, where it is verified with the employee that they are invited and welcome, whereupon they are admitted to the camp area.

The camp is located adjacent to a state highway about two miles from Middletown, Delaware, a town with a population of approximately 2,700.

Plaintiffs contend that the First and Fourteenth Amendments to the United States Constitution give them an unconditional right of access to Green Giant's labor camp for the purpose of communicating about unionization with the farm workers who are housed there. They argue that the labor camp, although privately owned by Green Giant, must be treated for First Amendment purposes as though it were public property, relying upon Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) and Amalgamated Food Employees Union v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). On the other hand, Green Giant contends that neither of these cases are applicable to the undisputed facts of this case.

We begin with the Supreme Court's most recent reemphasis of the proposition that "the First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on state action, not on action by the owner of private property used nondiscriminatorily for private purposes only." Lloyd Corp. v. Tanner, 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1971). And that while "special solicitude" has been shown for First Amendment guarantees, the United States Supreme Court "has never held that a trespasser or an uninvited guest may exercise general rights of free speech on

property privately owned and used non-discriminatorily for private purposes only." 407 U.S. at 568.

It is recognized that the Supreme Court also held in Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) that property is not insulated from the strictures of the First Amendment merely because it is privately owned and operated as a company town. Mr. Justice Black speaking for the Court in *Marsh* at p. 506 stated:

"Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it."

In *Marsh*, the Court found that Chickasaw, Alabama had all the attributes and characteristics of any other American town except that title was privately owned by a company. The Court proceeded to hold that the streets of the business district were accessible to and freely used by the public in general and that persons could distribute religious literature on the company owned streets which, for First Amendment purposes, would be treated as if publicly held.

In similar vein is the *Logan Valley* case. That case involved union picketing outside a store in a shopping center which was privately owned. The Court held that the owners of the shopping center could not ban organizational picketing in the parking lot and pick-up area of the store since the shopping center was freely open to the public. The Court stated:

"All we decide here is that because the shopping center serves as a community business block 'and is freely accessible and open to the people in

4. Its policy of permitting no solicitation of its employees within the camp and of permitting no trespassing by anyone is justified by Green Giant on the grounds that it avoids commotion and disturbances from large group sessions, protects the residents from harrassment of persistent solicitation, avoids problems and incidents of violence caused by peddlers selling shoddy merchandise or illegal items or soliciting for illegal services and activities such as drugs and illegal gambling.

the area and those passing through,' Marsh v. Alabama, 326 U.S., at 508, the State may not delegate the power, through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put." [391 U.S. at 319–320].

■ Thus, *Marsh* and *Logan* clearly stand for the proposition that First Amendment rights may be exercised upon private property when two essential elements are present: (1) accessibility to the property by the general public, and (2) the private property is the functional equivalent to a business district of the community. Indeed Justice Marshall in *Logan* noted:

"Thus where property is not ordinarily open to the public, this Court has held that access to it for the purpose of exercising First Amendment rights may be denied altogether." [391 U.S. at 320].

Then, in Lloyd Corp. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), the Supreme Court, in discussing the two basic requirements—functional equivalence to a municipal business district and openness to the public, emphasized that two additional requirements were necessary to trigger the *Logan Valley* rule:

"The [Logan Valley] opinion was carefully phrased to limit its holding to the picketing involved, where the picketing was 'directly related in its purpose to the use to which the shopping center property was being put' . . ., and where the store was located in the center of a large private enclave with the consequence that no other reasonable opportunities for the pickets to convey their message to their intended audience were available." [407 U.S. at 563].

Indeed, the Court went on to state:

"It would be an unwarranted infringement of property rights to require them to yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist." [407 U.S. at 567].

None of these cases support the contentions of the plaintiffs here. The Green Giant labor camp is not open to the public generally. It is in no respects analogous to either a traditional company town as in *Marsh* or to a shopping center as in *Logan Valley*. If anything the camp is more like a large private boarding house. Access to the fenced camp is closely limited to the workers who live there, their invited guests and the licensees of Green Giant who provide necessary services. The labor camp is not a self-sufficient entity. Its fire and police protection and utilities come from outside. It does not have the business facilities of a shopping center or a town. These are provided by the public stores in the Town of Middletown.

■ On the facts of this case, the Court finds that Green Giant has not so dedicated and used its camp to lose its private property status for First Amendment purposes.

This Court is aware that other courts on quite different factual basis have determined that other migrant labor camps are subject to First Amendment strictures because of their physical isolation or because of the services rendered have been considered the equivalent of a company town as in *Marsh*. Petersen v. Talisman Sugar Corp., 478 F.2d 73 (C.A. 5, 1973); Velez v. Amenta, 370 F. Supp. 1250 (D.Conn.1974).

Moreover this is not a case in which the plaintiffs have made a sufficient showing that Green Giant has physically or psychologically isolated the camp residents. The camp workers receive mail, have access to public telephones in the camp, are afforded the opportunity to watch television, are given free bus shuttle service to Middletown and are in no way restricted to the camp when they are not working the fields.

Furthermore, there has been no showing that there are no adequate alternative avenues of communication with the camp residents by the plaintiffs without unrestricted access to the camp. This Court is unwilling to assume that Green Giant or its agents will interfere or obstruct the passage of mail to the camp residents in violation of 18 U.S.C. §§ 1701 and 1702 or that they would attempt to restrict them from attending any meeting called by the plaintiffs at some public or private place other than upon Green Giant's private property.

Because the Court finds on the present facts that the Green Giant labor camp has not assumed in any significant degree the functional attributes of public property devoted to public use, that property can not be held to be subject to the commands of the First and Fourteenth Amendments. Plaintiffs' motion for a preliminary injunction will be denied.

The above shall constitute the findings of fact and conclusions of law required by Rule 52(a), F.R.Civ.P.