PER CURIAM.
The final judgment entered below read as follows:
“FINAL JUDGMENT
This matter came on to be heard before me on August 23, 1973, upon plaintiff’s Complaint for an injunction and declaratory judgment, and the Court, having reviewed the pleadings, and having heard the testimony and considered the documentary evidence presented does hereby make the following findings of fact:
FINDINGS OF FACT
1. The plaintiff, Albert Lee, is employed as an investigator by Florida Rural Legal Services, Inc., a Florida nonprofit corporation. The nonprofit corporation was chartered for the purpose of providing legal assistance to migratory agricultural workers, in keeping with the scope of such programs as outlined in the Economic Opportunity Act, 42 USC Section 2809(a)(3).
2. Defendant, A. Duda & Sons, Inc., is a Florida Corporation engaged in the business of cultivation, harvesting and packaging of various agricultural products and does business in the vicinity of Naples, Collier County, Florida. Defendant, James L. Malcolm, is the farm manager of Duda’s operations within the Naples area. He is responsible for the operation of certain housing areas commonly called migratory labor camps, wherein living accommodations are offered to those migrant workers who desire them.
3. The plaintiff, Albert Lee, sought access to Duda’s two migratory labor camps in and around Naples in April, 1973. Lee was asked by Malcolm if he had any specific individual with whom he wished to see. Malcolm further advised Lee that any such individual could be made available for conferences with Lee at a room to be furnished by the defendants. Lee stated that he wanted access to the camps for purposes of investigating living conditions. Malcolm stated that the [sic] would have to receive advice from his home office before access could be granted. After conferring with the home office Malcolm advised Lee that he could not permit him to enter the camps. Lee made no further effort to investigate living conditions, Lee was not threatened by Malcolm or any of Duda’s employees should Lee make further efforts to enter the camp.
4. The defendant employs migrant farm workers from October through April of each year. The numbers vary from 200 to 300. These workers live in those housing facilities provided by Duda.
5. Lee testified that he was instructed to seek access to the camps by one of the attorneys of Florida Rural Legal Services, Inc., for the purpose of investigating conditions to determine whether or not migrant workers were being held against their will and subjected to involuntary servitude and peonage. Lee stated that his overall purpose was to talk to the people in the camps to see if everything was going all right. Florida Rural Legal Services, Inc. acts as attorneys for migrant laborers and the duties of Lee is an investigator for attorneys.
6. Attorneys for Florida Rural Legal Services, Inc. are members of The Florida Bar and practice law in a corporate *394 form under a charter obtained from the Office of the Secretary of the State of Florida. That charter reads in pertinent part:
‘All the purposes and objectives of the corporation shall be achieved by the lawyers employed in its programs in conformity to the cannons or professional ethics (sic), the rules of professional conduct governing lawyers and the applicable decisions of the Supreme Court of the United States.’
Further, the purpose of this corporation is as follows:
‘The corporation shall provide a wide variety of legal services, including, but not limited to, defense and prosecution of civil actions, defense of criminal actions where counsel is not otherwise provided by the State or Federal Government, defense of juvenile cases, consultation, advice and representation before all types of tribunals and administrative agencies of the Federal, State and Local governments. It shall furnish advisory and education services in connection with consumer education, consumer fraud, landlord and tenant practices, eligibility for various assistance and aid programs, domestic relations problems, problems involving real and personal property and small businesses, wage earner legal rights and remedies, the rights of those accused of crime and such other subjects as, from time to time, may be advisable.’
7. Upon the foregoing findings of fact, the Court makes the following conclusions of law:
CONCLUSIONS OF LAW
1. This Court has jurisdiction of the subject matter and the parties.
2. It is the Court’s opinion that the provisions of Title 42 Section 2809(a) (3), which charge Florida Rural Legal Services, Inc. with the responsibility of providing legal assistance to ‘persons living in poverty’ justify plaintiff’s right to communicate with such persons. Further, Title 42 Section 2861 et seq. of which Section 2862(b)(1) provides that programs established under this section may include legal advice and representation. Section 2809(a) (3) requires that projects involving legal advice and representation established pursuant to its provision shall be carried on in a way that assures maintenance of a lawyer-client relationship consistent with the best standards of the legal profession.
This Court has reviewed numerous decisions of the State and Federal Courts, including the most recent decision of the United States Court of Appeals for the Fifth Circuit entitled Peterson [Petersen] v. Talisman Sugar Corporation, et al, [478] F.2d [73] (1973) and concludes that the plaintiffs do have a right to communicate with migrant farm workers for the purpose of advising them of their rights under prevailing State and Federal statutes. The right to communicate carries with it the right of access. This Court grants that right upon the following terms and conditions:
(a) Albert Lee and Florida Rural Legal Services, Inc. will give reasonable notice to Duda of the times when they would like to visit the Camps.
(b) Visitations shall be reasonable in terms of their frequency and duration. Such visits will not occur during working hours so that there may be no interference with the operations of the business of the defendants.
(c) That Florida Rural Legal Services, Inc. its attorneys and investigators is required when it renders legal advice and representation to maintain a lawyer-client relationship consistent with the best standards of the legal profession.
3.In view of the preceding, the Court is of the opinion that there is no *395 legal necessity for a declaration of the rights of the plaintiff as prayed for in the Complaint and the same is accordingly denied.
4. The Plaintiff’s Motion for Summary Judgment, upon which ruling has been withheld, is herewith denied.
5. The defendants be and they are hereby enjoined from denying the plaintiff, its attorneys and agents, access to its labor camps and housing facilities, so long as there is joint compliance by both parties with the terms and conditions hereinbefore set forth.
ACCORDINGLY, let an appropriate decree be entered this 17th day of September, 1973, costs be assessed against the Defendants and to go from here hence without day.
/s/ Charles T. Carlton_
CHARLES T. CARLTON
Circuit Judge”
In holding that the plaintiff had a right of access to the migrant workers, the court apparently felt that the defendants’ labor camp was sufficiently similar in nature to the one in Petersen v. Talisman Sugar Corporation, 5th Cir. 1973, 478 F.2d 73, so as to apply the rationale of Petersen to the instant case. Cf. In re Asociacion de Trabajadores Agrícolas de Puerto Rico v. Green Giant Co., D.Del.1974, 376 F.Supp. 357. No one quarrels with this conclusion.
While holding that the plaintiffs had a First Amendment right of access to the migrants, the court in Petersen observed that the owner-employer could establish reasonable rules incident to granting the access in order to prevent unnecessary interference with its business activities. Since the parties in the instant case were unable to agree, the court undertook to establish conditions relating to access, a procedure followed under similar circumstances in Velez v. Amenta, D.Conn. 1974, 370 F.Supp. 1250, and United Farm Workers Union, AFL-CIO v. Mel Finerman Co., D.Colo.1973, 364 F.Supp. 326. The reasonableness of these conditions forms the basis for the plaintiff’s appeal.
The defendants have cross-appealed asserting that the court should have added a condition which would require the plaintiff and his employer to notify the defendant of any alleged abuses or violations of law prior to the institution of litigation so as to give them a reasonable opportunity to investigate and correct legitimate grievances and to require the plaintiff and his attorneys to desist from issuing any press releases concerning alleged abuses until the defendants had been advised and given an opportunity to take such corrective action as might be required.
Plaintiff cannot here complain of the requirement to give notice to Duda when he would like to visit the camp, because his counsel told the court at the time of the hearing that he had no objection to this condition. The requirement that visitations be reasonable and not occur during working hours so as not to interfere with the operation of the defendants’ business represents a judicious effort to balance the conflicting rights and interests of the parties. However, the court should not have specified as a condition to access that Florida Rural Legal Services, Inc. and its attorneys and investigators be required to maintain an ethical lawyer-client relationship with the migrants. There are suitable remedies to deal with unethical conduct, and where the record does not show any to have occurred in the past, it is inappropriate to anticipate that it may occur in the future.
With respect to the cross-appeal, there are several federal statutes which require extrajudicial efforts to resolve conflict in advance of litigation. It may be assumed that these will be followed to the extent that they apply. The court was correct in refusing to anticipate the occasion or the applicability of these statutory conditions precedent. Likewise, there was no error in refusing to require the plaintiff to *396 register complaints with Duda before speaking to the press.
The relationship between the parties is subject to continuing judicial oversight. However, we expressly decline to consider certain proceedings which apparently took place below subsequent to the filing of this appeal as the record thereof is not properly before us.
The judgment is affirmed, as modified by striking therefrom condition (c) under Conclusions of Law.
McNULTY, C. J., and BOARDMAN and GRIMES, JJ., concur.