Robert Eagan State Attorney Orlando
QUESTION:
May an owner deny access to persons who wish to communicate with migrant farm laborers at a migrant labor camp?
SUMMARY:
A property owner cannot deny access to persons seeking to communicate with migrant farm laborers at a migrant labor camp, subject to reasonable conditions. Therefore, persons seeking access to migrant farm laborers for the purpose of providing them with health, social, and legal services do have an affirmative defense to a charge of criminal trespass.
In an earlier opinion, AGO 073-6, I responded to a similar question involving the applicability of the Florida criminal trespass statute, then s. 821.01, F. S. 1973, to labor representatives visiting laborers at a migrant labor camp. In that opinion, I concluded that based upon available state and federal case law `Florida's criminal trespass statute would probably not be applied to divest migrant farm laborers of their constitutional rights.' However, in reliance upon a then recent federal district court decision, Petersen v. Talisman Sugar Corporation, Case No. 72-198-Civ-CR (M.D.Fla. 1972), I further opined that the statute might still be applicable in the proper case. One reason for this was that the district court decision in Petersen stood for the proposition that justice and equity alone demand that labor representatives not be entitled to the same access to migrant labor camps as that afforded organizations providing medical supplies and services, nutritional foodstuffs, and related services. This is contrary to the holding in Flogueras v. Hassle,331 F. Supp. 615 (W.D.Mich. 1971), and I note with interest that the decision in Petersen has since been reversed. See Petersen v. Talisman Sugar Corporation, 478 F.2d 73 (5th Cir. 1973). Therefore, it is appropriate that my opinion with respect to your question be adjusted.
In the Petersen case, the court applied a two-pronged test to actions involving questions of access to migrant laborers as a method by which the rights of the property owner and those desiring access may be balanced. These are: The availability of alternative avenues of communication and the use to which the property is put by the owner. Applying this test, the court found that the labor camp involved did, in fact, resemble a company town, that the laborers were effectively isolated on the owner's property, and that there existed no effective alternative means of communication available to the labor organization representatives.
Of interest are two cases which have cited the Petersen decision. In Asociacion de Trabajadores, Etc. v. Green Giant Co.,518 F.2d 130 (3rd Cir. 1975), the court found that there was an absence of any showing that no alternative avenues of communication existed and held against the labor representatives. The decision in Lee v. A. Duda Sons, Inc., 310 So.2d 391 (2 D.C.A. Fla., 1975), is of particular importance. There, the court affirmed a lower court order enjoining a property owner from denying to representatives of a legal service organization access to migrant farm laborers. The court noted that the lower court had apparently found the owner's labor camp to be sufficiently similar to the one in thePetersen case.
It is evident from these decisions and those cited therein that just as the rights of migrant laborers to communications and services have been judicially recognized, so have the rights of those seeking access to the migrant laborers. I think that, had the courts held otherwise, the rights of migrant laborers would have been rendered useless.
In my opinion, it necessarily follows that this right of access would constitute an affirmative defense to a charge of criminal trespass. Indeed, in the Petersen case mention is made of the fact that prior to the institution of the federal suit by the plaintiffs charges of criminal trespass against them had been dismissed. The Fifth Circuit remarked as follows:
 However, after notice of appeal was filed in this case, an information was brought charging plaintiffs with trespass on Talisman's property. The trial judge dismissed the charges on the ground that `to prevent their entry might lead to a condition where employees are subjected to a form of involuntary servitude, wherein the masters decide who may communicate with the servants.' State v. Petersen, et al., Case No. 72M-8209, filed in the Small Claims-Magistrate Court, Criminal Division, in and for Palm Beach, Florida. [Id. at 77.]
As did the Fifth Circuit, I agree with the reasoning of the trial judge in dismissing the criminal trespass charges. It must be emphasized, however, that in this jurisdiction a showing must be made that the two-pronged test mentioned in the Petersen case has been met.
While the hereinabove cited decisions recognize the right of access but place conditions thereon, I believe the better reasoning is that evidenced by the decisions in State v. Shack,277 A.2d 369 (N.J. 1971), and the Folgueras case wherein the courts reached their conclusion on other than constitutional grounds. Simply stated, these decisions stand for the proposition that property ownership does not itself vest the owner with dominion over the lives of people living on the property and in my opinion represent the enlightened view held by my counterpart in the State of Michigan who stated that:
 The freedom of religion, speech, press and assembly guaranteed by the First and Fourteenth Amendments to the United States Constitution are operative throughout the length and breadth of the land. They do not become suspended on the threshold of an agricultural labor camp. The camp is not a private island or an enclave existing without the full breadth and vitality of federal constitutional and statutory protection. [OAG, 1971-72, No. 4227, p. 32 (April 13, 1971).]
In my opinion, a property owner cannot deny access to persons seeking to communicate with migrant laborers subject to reasonable conditions recognized by the court in the Shack case. For example, it is not unreasonable to require a visitor to identify himself and state his business.
Prepared by: Wallace E. Allbritton, Assistant Attorney General