462 So.2d 849 (1985)
Carole Emerson ROYAL and James Thornton Royal, Appellants,
v.
Annie Chitty PARADO, Appellee.
No. AV-185.
District Court of Appeal of Florida, First District.
January 22, 1985.
*851 Walter R. Stedeford, and Peter L. Dearing and Thomas F. Harkins, Jr., Mahoney, Hadlow & Adams, Jacksonville, for appellants.
Charles Cook Howell, Jr., Howell & Howell, P.A., Jacksonville Beach, for appellee.
SMITH, Judge.
Appellants seek reversal of a final judgment rescinding a quitclaim deed and quieting title to certain parcels of land located in St. Johns County, Florida. We affirm the trial court's jurisdiction, but find error on other issues, and vacate the final judgment and remand for further proceedings.
The issues are (1) whether under the "local action" rule the trial court had jurisdiction of the cause of action, which sought rescission of the deed to property located in a county other than the one in which suit was filed; (2) whether it was error to allow appellee (plaintiff), after the trial but before final judgment, to re-assert a claim for monetary relief against appellants, in addition to rescission, where appellee announced at the beginning of the trial that the claim for monetary relief was withdrawn; and (3) whether the court erred in granting rescission of appellee's deed to appellants, especially since there was no finding of fraud on the part of appellants, and the judgment does not return them to their status quo. We find error in the court's ruling on the latter two issues, requiring reversal.

I  FACTS
The facts of this drawn-out episode were found by the trial court at the conclusion of a non-jury trial substantially as follows. Appellee is an 80 year old widow who has lived on a 75 X 100 foot parcel of land located in St. Johns County since 1945. Appellants, defendants below, are the great-niece and great-nephew-in-law of appellee, respectively. During the extended illness of appellee's second husband, both appellants provided appellee with housekeeping and other assistance. The appellants' assistance to the appellee included transporting appellee to the grocery store, to the doctor, and various other errands, assisting her to purchase an automobile, repairs and other maintenance around appellee's property, cooking, and other activities. The trial court characterized the activities of appellants during this time as that of two "devoted, attentive younger relatives." Subsequently, in 1979 the parties began discussions of a possible arrangement whereby appellee would convey the easterly one-half of her land to appellants, in exchange for a promise from the appellants that they would live on the conveyed property and provide care and attention to appellee for the rest of her life. Apparently, appellee had a dread of living her later life in a nursing home, and hence was willing to give up possession of a portion of her property in exchange for assurances that this would never come to pass.
As a result of these discussions, on August 1, 1980, appellee conveyed the easterly one-half of her property to the appellants. Later, pursuant to the agreement, she granted appellants an easement across her retained western one-half of the parcel, in order to allow appellants access to the adjoining waterway. On February 25, 1981, appellee also executed a deed to herself and appellant Carole Royal, as joint tenants with right of survivorship, covering the western half of the lot, on which appellee's home was located. In order to provide a residence for themselves, appellants then borrowed approximately $33,000 from the Beach Federal Savings and Loan Association, Jacksonville Beach, mortgaging the property conveyed by appellee as security, and commenced construction of a residence on the eastern half of the property at issue here. The total investment by appellants in the residence was $74,178.
In early June 1981, appellants and their two children moved into the newly constructed residence, although the residence was still without electricity and water. With appellee's permission, appellants and their children used the utilities in appellee's home for cooking and bathing. Approximately *852 two to three weeks after this arrangement began, the relationship between the parties began to deteriorate. From that time until August of 1981, appellants apparently provided minimal "care and attention" to appellee. For example, after appellee's hospitalization and surgery, appellee received attention from her niece, Lillian Mack Emerson (appellant Carole Emerson Royal's mother), rather than from the appellants. Also, when appellee returned to her home after surgery on October 4, 1981, she was cared for by a professional companion. According to the trial court, the only evidence that appellants were continuing to provide appellee with "care and attention," as agreed, was appellant James Royal's continued mowing of appellee's yard and watering of her tomato plants.
Two significant events (characterized by the trial court as "shocking") took place on August 12, 1981. First, Lillian Mack Emerson and appellant Carole Royal went to the savings and loan association where appellee conducted her banking business, and attempted to cash certain certificates of deposit, in the amount of $85,000, which were owned jointly in the names of appellee, Mrs. Emerson, and appellant Carole Royal. The attempt was unsuccessful, however, because on the preceding day a freeze had been placed on the certificates of deposit by appellee after she had discovered that the certificates were missing from her safety deposit box. Appellee testified at trial that she had placed the certificates in the joint names of herself, Mrs. Emerson, and appellant Carole Royal in an effort to reduce probate costs upon her death, as well as to see to it that money would be available for her burial. Apparently, Mrs. Emerson had been allowed by appellee to write and sign checks from a joint savings account opened in the name of Mrs. Emerson and appellee for groceries and medical expenses. Regarding the August 12, 1981 effort to cash the certificates of deposit, Mrs. Emerson testified that she removed the certificates from their safety deposit box and attempted to cash them "for [appellee's] own good."
The second August 12, 1981 incident also involves Mrs. Emerson and the appellants. Mrs. Emerson petitioned the Circuit Court of St. Johns County for an emergency mental evaluation of the appellee pursuant to Section 394.463, Florida Statutes, advising the deputy clerk of court that appellee was in need of long-term convalescent care and emergency evaluation. Appellants Carole and James Royal accompanied Mrs. Emerson to the courthouse, where they signed two affidavits in support of Mrs. Emerson's petition. As a result of the petition, appellee was transported by the St. Johns County Sheriff's Department to Flagler Hospital, St. Augustine. Appellee was evaluated  and immediately released  when neither the intake examiner nor the clinical psychologist could find any basis for detention or treatment of appellee. No evidence was introduced at trial that appellee had ever received treatment for mental or emotional problems.

II  LITIGATION COMMENCED
Appellee initially filed a one-count complaint against Mrs. Emerson, seeking equitable remedies concerning the certificates of deposit Mrs. Emerson attempted to cash. Shortly thereafter, on October 30, 1981, she filed an amended six-count complaint, adding the appellants as defendants in one count seeking rescission of the deeds and easement granted to appellants. As grounds, appellee alleged that appellants had obtained the deeds and easement by fraud, by means of their promise to see that she would be cared for in her home the rest of her life, with fraudulent intent not to perform the same. Later, appellee filed an amendment to Count II of her amended complaint, requesting in paragraph D of her prayer for relief that the trial court order appellants to pay in full and satisfy the mortgage placed on the easterly one-half of her parcel of land by appellants. Appellants filed an answer and a counterclaim seeking relief, in the event rescission was granted to appellee, in the form of a lien or trust on the property due to their improvement by building the residence *853 thereon, or in the alternative, that damages be awarded in the amount of the improvement.
Trial on Count II of the amended complaint against the appellants was held on January 31 and February 1, 1983.[1] Prior to taking any testimony at the trial, counsel for appellee stated on the record that appellee was voluntarily waiving any claim for the relief requested in paragraph D of Count II of the amended complaint  the request that appellants continue payment of the mortgage. However, after the trial, appellee moved to withdraw her pre-trial waiver of any claim that appellants be required to pay the mortgage. Although it is unclear from the record, apparently oral argument was heard on this motion, which was granted by the terms of the final judgment.
On June 30, 1983, the trial court entered a final judgment for appellee setting aside the deeds and easement, requiring appellants either to move the house or remove themselves and their belongings from the house, and requiring them to continue making mortgage payments and otherwise denying them any relief under their counterclaim. In support of the judgment, the trial court concluded that appellants had provided no care for appellee since August, 1981; that the strong relationship of trust and confidence which appellee had for the appellants and which was a motivating factor for the conveyance of the property to the appellants was breached by appellants' participation in the efforts to redeem the certificates of deposit, and their participation in the Baker Act evaluation of appellee; and that the comfort and support given by appellants to appellee from 1978 to August 1981 was "reversed" by these acts and amounted to a failure of consideration. This appeal followed.

III  JURISDICTION
Appellants first claim that the trial court was without jurisdiction to render any judgment affecting the property in question, based on the local action rule which requires that a suit seeking transfer of title to real property be brought in the county where the real property is situated. Franklin v. Sherwood Park, Ltd., Inc., 380 So.2d 1323 (Fla. 3d DCA 1980); Hendry Corp. v. State Board of Trustees of Internal Improvement Trust Fund, 313 So.2d 453 (Fla. 2d DCA 1975). Appellants note that the rule has been phrased in jurisdictional terms, Georgia Casualty Co. v. O'Donnell, 147 So. 267 (Fla. 1933), and hence is not subject to exceptions or waiver. Appellants point out that here appellee sought to cancel and rescind a quitclaim deed to real property, as well as an easement over a portion of this property; that the trial court's order declared appellee to be the owner in fee simple of the entire parcel of property in dispute; and that appellee's title to the property was thereby quieted. Therefore, appellants contend, since the result of this action was to transfer title to real property located in a county beyond the territorial jurisdiction of the court below, the local action rule applies. Parra v. Parra, 362 So.2d 380 (Fla. 1st DCA 1978). Appellants' statement of the law is correct but not controlling here.
Appellee here sought rescission, an equitable remedy. Leesburg State Bank v. Lyle, 99 Fla. 535, 126 So. 791 (1930); Davis v. McGahee, 257 So.2d 62 (Fla. 1st DCA 1972). The local action rule does not apply with its full rigidity in suits in equity. Baum v. Corn, 167 So.2d 740 (Fla. 2d DCA 1964), quoting 56 Am.Jur. 24:
[T]his is because the decree made will not of itself necessarily be binding on the lands, but will take effect only through the action which the parties to the suit are compelled to take.
167 So.2d at 743. See also, Annot., 77 ALR 2d 1014 (1961), stating that generally, an action merely for rescission or cancellation of a contract for the sale or exchange of land is transitory or in personam, and not a local action. Thus, in Coon v. Abner, 246 So.2d 143 *854 (Fla. 3d DCA 1971), the court found that venue for the cancellation of a note representing a mortgage was proper where the defendant or defendants reside, and not where the real property the note applied to was located. The court said that such an action did not involve title to, or a cloud or lien on, real property, and hence was not covered by the local action rule. See also, Singer v. Tobin, 201 So.2d 799, 801 (Fla. 3d DCA 1967) (equitable actions can be maintained in any jurisdiction where the defendants can be found even though the suit will affect lands not within the territorial jurisdiction of the court). Cf. Sales v. Berzin, 212 So.2d 23 (Fla. 4th DCA 1968) (local action rule applies where the suit is primarily seeking transfer of title to real property. In such a case, the suit is considered to be quasi in rem, and must be brought where the land in question is located.)
Here, appellee's action was not instituted primarily to seek transfer of title to the property in dispute, but rather to invoke the equitable remedy of rescission, which would operate primarily as a coercive, in personam action against the appellants. Although it is true that the judgment also purports to declare appellee the owner in fee simple of the property in question and to quiet title to the property, the judgment speaks only as to appellants' claims to the land, not the claims of any other people wherever situated. Accordingly, this action appears to be governed by the language found in Lakeland Ideal Farm & Drainage Dist. v. Mitchell, 97 Fla. 890, 122 So. 516, 518 (Fla. 1929), quoting from Columbia National Sand Dredging Co. v. Morton, 28 App.D.C. 288, 7 L.R.A. (N.S.) 114, 8 Ann.Cas. 511:
... From a very early period, courts of equity having jurisdiction of the person of a party have exercised the power to compel him to perform a contract, execute a trust, or undo the effects of a fraud, notwithstanding it may relate to or incidentally affect the title to land in another jurisdiction. The doctrine is thoroughly well established within this limitation, that the principal question involved must be one of contract, trust, or fraud, raising up a duty which a person within the power of the court may be compelled to perform, although the act when performed may operate to affect, and even to pass, the title to land outside the territorial jurisdiction of the Court.
Here, appellants do not dispute that the trial court below could exercise in personam jurisdiction over them. Since this action primarily serves to strip appellants of rights acquired by means of their unperformed promises and agreements, the fact that it will impact by operation of law on the title to appellee's land does not in our judgment prevent application of the rule announced in Lakeland Ideal, supra. See, also Jutagir v. Marlin, et al., 453 So.2d 503 (Fla. 3d DCA 1984). Therefore, the trial court properly denied the appellants' motion to dismiss for lack of jurisdiction.[2]

IV  MONETARY RELIEF
Appellants next contend that the trial court erred in ordering that appellants would continue to be obligated on the mortgage. We agree. As noted previously, appellee's counsel had specifically waived appellee's prayer for relief requesting appellants' continued payment of the mortgage. Appellee had agreed on the record, prior to trial, that if she succeeded in recovering the disputed property, she would assume payment of the mortgage on the property. The trial court clearly erred in ordering them to continue to make mortgage payments upon rescission of their deed, appellee's counsel having withdrawn that claim prior to trial.
Reversible error may occur when an issue is reinjected into a cause once the evidence at trial has been closed, and after the party has previously voluntarily withdrawn the issue prior to trial. Lee v. A. *855 Duda & Sons, Inc., 310 So.2d 391 (Fla. 2d DCA 1975). Moreover, prejudice may occur when a party is allowed to occupy inconsistent positions on the factual and legal issues pursued. See, Federated Mutual Implement and Hardware Insurance Co. v. Griffin, 237 So.2d 38 (Fla. 1st DCA 1970), cert. dismissed, 240 So.2d 641 (Fla. 1970). Since appellee withdrew her claim on the record at the outset of the trial, appellants had no opportunity or apparent need to offer evidence or give argument on the mortgage payment issue, and therefore were prejudiced by the trial court's post-trial order granting the mortgage payment relief sought.[3] This error requires reversal.

V  RESCISSION
Finally, appellants contend that the trial court erred in granting rescission. Although we do not foreclose the granting of rescission, we do agree that the judgment as rendered improperly grants such relief. As a rule, a court of equity will ordinarily rescind an instrument only for fraud, accident or mistake, and not because of the mere want or failure of consideration; an action for damages at law is usually considered adequate where failure of consideration exists. Rennolds v. Rennolds, 312 So.2d 538, 541 (Fla. 2d DCA 1975). Here, the trial court's order and subsequent final judgment predicates the granting of the remedy of rescission on failure of consideration occasioned by appellants' actions culminating in the events of August 12, 1981. The trial court did not make a specific factual finding that appellants were guilty of fraud. It appears, therefore, that the remedy applied does not coincide with the trial court's findings. It is unclear to us, however, whether the trial court upon re-examination of the evidence in the light of applicable legal principles might nevertheless find rescission justified in this case.
The facts recited by the trial court suggest fraudulent inducement as a possible alternate ground for rescission. This ground for rescission exists where at the time of execution of a contract, the party promising to perform an act in the future has a secret undisclosed intent not to carry it out, but fraudulently represents that he will perform as an inducement to the other party to enter into the contract. The rule, which may be applicable to the facts in the case at bar, is well recognized where a deed is executed in consideration of an agreement by the grantee to support the grantor. Where the grantee had no intention of carrying out the agreement, this constitutes a fraud vitiating the conveyance. 9 Fla.Jur.2d, Cancellation, § 20. Recognition of the sometimes difficult evidentiary problem in proving fraudulent inducement at the time the agreement is consummated no doubt persuaded the Florida Supreme Court to hold, in Collins v. McKelvain, 138 Fla. 463, 189 So. 655, 656 (1939), on facts similar to the case at bar, that:
Conduct of the grantee, after accepting conveyance of property, and failing to provide support and maintenance for the grantor, gives rise to the presumption of an abandonment of the contract (to provide support and maintenance for the grantor) and of a fraudulent intent in entering into it and taking conveyance of the property; and relief is given upon this ground rather than upon the right to rescind for failure of grantee to carry out the terms of the contract. (citations omitted)
Quoted in Brown v. Phillips, 330 So.2d 510, 511-512 (Fla. 2d DCA 1976). See also, Thomas v. Vickers, 196 So. 602 (Fla. 1940); Cook v. Adams, 89 So.2d 6 (Fla. 1956). Here, the trial court found that the appellants provided nominal care and attention to appellee after June 1981, when the new *856 house was substantially completed. The trial court also found that the "shocking" character of appellants' actions of August 12, 1981, in effect nullified all previous efforts of appellants in providing care and attention to appellee. Arguably, these actions were sufficiently egregious to raise a presumption of fraudulent inducement under the authorities above cited. However, whether rescission is justified under this theory is a matter we leave to the further consideration of the trial judge on remand.
In the event the trial court, on remand, continues to opt for rescission as the appropriate remedy here, considering all the circumstances, one further matter must be addressed. As previously noted, appellants complain (and rightly so, as the facts recited demonstrate), that the final judgment does not return them to their status quo. The law is well settled that a condition precedent to the granting of the remedy of rescission is that the other party be returned to his status quo. 9 Fla. Jur.2d, Cancellation, § 34. Generally, a contract will not be rescinded even for fraud when it is not possible for the opposing party to be put back into his pre-agreement status quo condition. Id. at § 36. Moreover, a party who makes good faith improvements to the land to be returned to another is entitled to compensation to the extent that the improvements have added value to the returned property. Id. at § 35. It is manifestly clear that the judgment did not return appellants to their status quo, for they not only made improvements to appellee's property for which no compensation was received, they were also ordered to continue making mortgage payments on a residence they no longer are able to occupy and from which they can derive no benefit.[4]
Finally, we direct that on remand the trial court be guided by the rule that the court should go no further than is reasonably necessary to balance fully the equities flowing between the parties, and in exercising its discretion should grant relief appropriate to the wrongs suffered, or as may be reasonably called for by the circumstances of the case. See, Rennolds v. Rennolds, supra, 312 So.2d at 542.
Accordingly, the judgment below is affirmed in part, and reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.[5]
MILLS and NIMMONS, JJ., concur.
NOTES
[1] The case against Mrs. Emerson, tried earlier, was concluded by appellee's dismissal, with prejudice, of all counts of the complaint against Mrs. Emerson.
[2] Courts of equity possess the fullest liberty to mold decrees to do equity, Singer v. Tobin, 201 So.2d at 801; Circle Finance Co. v. Peacock, 399 So.2d 81, 84 (Fla. 1st DCA 1981); Sottile v. Mershon, 166 So.2d 481 (Fla. 3d DCA 1964).
[3] The parties erroneously argue this point in terms of whether appellee "voluntarily dismissed" her claim for relief regarding payment of the mortgage on the residence. Appellee did not dismiss her cause of action, either in whole or in part, or any counts in her cause of action. Rather, she waived her claim for that particular form of relief. Thus, Randle-Eastern Ambulance Service, Inc. v. Vasta, 360 So.2d 68 (Fla. 1978), and its progeny are irrelevant.
[4] We have not overlooked the provision of the final judgment which allowed appellants thirty days within which to remove the newly constructed dwelling from appellee's property. The extent to which this might be considered as restoring the status quo would depend, in turn, upon the feasibility, both physical and economic, of such removal, neither of which were mentioned in the final judgment.
[5] Nothing in this opinion should be construed as preventing the trial court on remand from allowing appellee to amend her second amended complaint to seek mortgage payment relief, from reopening the evidence regarding appellee's entitlement to such relief, or from conducting such further proceedings and entering such further or amended order or judgment as may be necessary to balance the equities between the parties.