NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EYVONNE ANDREWS, CHARLIE RESHARD, MELINDA ROBINSON, MICHAEL ROBINSON, AOC, LLC, JOHN BOLAND, GAIL BISBEE, CHRISTINE KELLY, ANN BUTLER, MICHAEL THOMAS, JR., MARY HOLMES,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1814

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00417-EGB, Senior Judge Eric G. Bruggink.

---

Decided: February 22, 2021

---

JAMES F.B. DANIELS, McDowell, Rice, Smith & Buchanan, PC, Kansas City, MO, argued for plaintiffs-appellants. Also represented by ROYCE DERYL EDWARDS, Law Office of R. Deryl Edwards, Joplin, MO.

KATELIN SHUGART-SCHMIDT, Environment and Natural Resources Division, United States Department of Justice,

Washington, DC, argued for defendant-appellee. Also represented by JONATHAN D. BRIGHTBILL, ERIC GRANT, ERIKA KRANZ.

_____

Before O'MALLEY, CLEVENGER, and TARANTO, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

This "Rails-to-Trails" case arises pursuant to the National Trails System Act ("Trails Act"), 16 U.S.C. § 1247(d). This is an appeal from the final judgment of the United States Court of Federal Claims ("Claims Court") on Plaintiffs' claim that the government has effected a taking of their property by precluding the reversion of an easement to Plaintiffs after rail service over the property at issue was terminated. The Claims Court granted summary judgment in favor of the government on the basis that Plaintiffs did not own any property interest which could be subject to a taking. *Andrews v. United States*, 147 Fed. Cl. 519 (2020). For the reasons set forth below, we *affirm* the Claims Court's grant of summary judgment.

## BACKGROUND

The Trails Act provides a mechanism whereby a rail corridor upon which rail service has been terminated may be "railbanked" and converted to interim use as a recreational trail. Where the railroad that operated service over the rail corridor held a mere easement to the underlying property, we have held that establishment of a recreational trail—and the preclusion of easement reversion—can form the basis for a valid physical takings claim. *Preseault v. United States*, 100 F.3d 1525, 1550 (Fed. Cir. 1996). Our court has further held that issuance of a Notice of Interim Trail Use ("NITU") under the Trails Act (which initiates the process of a potential railbanking), even in the absence of a consummated agreement to establish trail use or any actual trail use, can potentially constitute a physical

taking. *Caquelin v. United States*, 959 F.3d 1360, 1366–72 (Fed. Cir. 2020); *Ladd v. United States*, 630 F.3d 1015, 1023–24 (Fed. Cir. 2010).

The Live Oak, Tampa & Charlotte Harbor Railway ("LOTCHR") and its successors in interest, most recently CSX Transportation ("CSXT"), maintained a rail line over the property at issue ("an approximately 11.62-mile rail line on CSXT's Southern Region, Jacksonville Division, . . . at High Springs in Alachua County, Florida") from the late 19th century until 2012, when CSXT began the process of abandoning rail service on the corridor. *Andrews*, 147 Fed. Cl. at 520–23 After a NITU was issued for this rail corridor, Plaintiffs filed the takings claim underlying this appeal in the Claims Court. *Id*. Plaintiffs argue based on several alternative theories that LOTCHR never acquired fee simple title to the property, and instead held only an easement for railroad purposes. Plaintiffs thus argue that the issuance of the NITU constitutes a taking because it precludes reversion of the easement to Plaintiffs following abandonment of rail service over the property.

The parties' most significant dispute concerns whether LOTCHR was a legally constituted Florida corporation at the relevant times, and thus whether LOTCHR was legally capable of owning a property interest in the property at issue. Plaintiffs argue that LOTCHR was neither a *de jure* nor a *de facto* corporation under Florida law at the relevant times, and thus did not legally exist and was incapable of owning property, nullifying the various purported conveyances of property to LOTCHR. In support of LOTCHR's corporate status, the government presented to the Claims Court a copy of LOTCHR's Articles of Incorporation dated July 1, 1881, J.A. 986–88,[1] and records of the Florida Secretary of State reflecting the filing of these articles with the

---

[1]    Citations to "J.A. __" refer to the Joint Appendix filed by the parties to this appeal.

Secretary on July 23, 1881, J.A. 1991. Plaintiffs do not dispute that these Articles were filed, but Plaintiffs argue that the record includes no evidence that a certificate of incorporation for LOTCHR was ever subsequently issued. Plaintiffs thus argue that LOTCHR did not satisfy the statutory requirements for incorporation under Florida law. Presuming that LOTCHR was not properly incorporated under Florida law, the parties also dispute whether LOTCHR was nonetheless a *de facto* corporation capable of owning property and transacting business.

The parties do not dispute that Plaintiffs' predecessors in interest once held fee simple title to the property at issue. On July 5, 1883, LOTCHR obtained a deed from Mary Shuford (the "Shuford deed") which "bargained sold conveyed and Quitclaimed . . . forever All That Certain Tract or parcel of land" to LOTCHR "for and in consideration of the sum of five dollars." J.A. 614-15. The parties do not dispute that the Shuford deed described and purported to convey all of the property at issue. Plaintiffs argued below that the Shuford deed conveyed an interest less than fee simple title, but Plaintiffs do not preserve that argument before our Court. Instead, Plaintiffs argue before our Court that the Shuford deed was not effective to convey any property interest, because LOTCHR was not a Florida corporation and was thus legally incapable of receiving the conveyance.

In granting summary judgment in favor of the government, the Claims Court concluded that there was no genuine dispute of material fact that LOTCHR was either a *de jure* or a *de facto* corporation at the relevant times. The Claims Court further concluded that LOTCHR took fee simple title by way of the Shuford deed, and thus that Plaintiffs were left with no property interest that could be subject to a taking. *Andrews*, 147 Fed. Cl. at 528.

Following execution of the Shuford deed, LOTCHR initiated a condemnation suit on September 18, 1883 against three defendants, including a "Mrs. Shuford," in the Circuit

Court of the Fifth Judicial District of the State of Florida. J.A. 653–56. The parties agree that this suit was initiated and that a commissioners' appraisal report was subsequently filed which "recommend[ed] that said petitioners do pay into the Register of [the] court the sum of seventy-six dollars as damages to said defendants for the right of way of said railway company[.]" *Andrews*, 147 Fed. Cl. at 522. The parties also agree that, under Florida law, a railroad which takes rights in property through condemnation takes an easement for railroad purposes, not fee simple title. However, the parties dispute whether this condemnation proceeding was ever finalized. The Claims Court thus did not reach the question of whether the condemnation proceeding was finalized, and we similarly do not reach this question.

Finally, following entry of the commissioners' appraisal report in the condemnation proceeding, two additional deeds conveying property to LOTCHR were executed: the Moore deed in April 1884, and the Foster deed in July 1885. *Id.* Between them, these deeds cover the alleged property of all Plaintiffs except Eyvonne Andrews and Michael and Belinda Robinson. Like the Claims Court, we find it unnecessary to consider the effect (if any) of the Moore and Foster deeds.

## DISCUSSION

Plaintiffs timely appeal from the Claims Court's grant of summary judgment in favor of the government. The Claims Court had jurisdiction over Plaintiffs' claims under the Fifth Amendment of the United States Constitution pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1). We have jurisdiction to review the final judgment of the Claims Court pursuant to 28 U.S.C. § 1295(a)(3).

The existence of a compensable property interest in a takings case is a question of law that is subject to *de novo* review. *Casitas Municipal Water District v. United States*, 708 F.3d 1340, 1351 (Fed. Cir. 2013). In particular, the

precise estate conveyed by the deeds at issue is likewise a question of law that is reviewed *de novo*, applying Florida law. *Chicago Coating Co. v. United States*, 892 F.3d 1164, 1169-70 (Fed. Cir. 2018).

Our Court "review[s] a grant of summary judgment by the Court of Federal Claims de novo." *Suess v. United States*, 535 F.3d 1348, 1348 (Fed. Cir. 2008). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A genuine dispute is one that "may reasonably be resolved in favor of either party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), and a "fact is material if it might affect the outcome of the suit," *id.* at 248. When evaluating a summary judgment motion, "all factual inferences should be viewed in the light most favorable to the non-moving party." *Chicago Coating*, 892 F.3d at 1169–70. In order to overcome a motion for summary judgment, the "party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985).

We begin with the issue of LOTCHR's corporate status as of July 5, 1883, when the Shuford deed was executed. We affirm the Claims Court's grant of summary judgment on the basis that LOTCHR was at least a *de facto* corporation by July 5, 1883. We accordingly do not review in depth the evidence related to LOTCHR's status as a *de jure* corporation because we find it unnecessary to reach the Claims Court's grant of summary judgment on the alternative basis that LOTCHR was a *de jure* corporation.

The parties agree that *Richmond v. Town of Largo* states the test under Florida law for the existence of a *de facto* corporation. The four elements required to establish the existence of a *de facto* corporation are: "(1) a law or charter authorizing such a corporation, (2) an attempt in

good faith to comply with the law authorizing its incorporation, and (3) unintentional omission of essential requirements of the law or charter, and (4) exercise in good faith of corporate functions under the law or charter." 19 So. 2d 791, 793 (Fla. 1944) (en banc). For the reasons discussed below, we agree with the Claims Court that there is no genuine dispute of material fact that LOTCHR satisfied these four elements as of July 5, 1883.

There can be no question that elements (1) and (3) are satisfied. Regarding element (1), there is no dispute that it was legal to incorporate a railroad corporation under Florida law in 1883. Regarding element (3), the parties agree that LOTCHR filed Articles of Incorporation with the Florida Secretary of State dated July 1, 1881, and that records of the Florida Secretary of State reflect the filing of these articles with the Secretary on July 23, 1881. We agree with the government that the alleged "omission of essential requirements of the law," namely the fact that a certificate of incorporation was allegedly never issued to LOTCHR after the Articles were filed, was per se unintentional on the part of LOTCHR. Section 1 of Chapter 1987 of the Act of the Florida Legislature of February 19, 1874[2] ("Chapter 1987") does not require any further action by LOTCHR following the filing of the Articles. The legal obligation to issue a certificate of incorporation is placed on the Governor and the Secretary of State. J.A. 936–37.

Regarding elements (2) and (4), the Plaintiffs argue that LOTCHR was not acting in good faith, and thus failed to satisfy the requirements of a *de facto* corporation. Plaintiffs do not and cannot dispute the historical facts that LOTCHR made "an attempt . . . to comply with the law authorizing its incorporation" by filing the Articles of

---

[2]    The parties agree that this was the statute governing incorporation of Florida railroad corporations at the relevant times.

Incorporation and that LOTCHR subsequently "exercise[d] . . . corporate functions," for example by purporting to purchase property and by filing a condemnation lawsuit, but Plaintiffs argue that these activities were not carried out in good faith.

The record does not support Plaintiffs' argument. Under the standard for "good faith" applied by Florida courts, the record discloses no genuine dispute of material fact that LOTCHR was acting in good faith. The Florida Supreme Court has said that good faith means acts with a "purpose [that] was sincere and amounted to an honest attempt to effectuate the purpose of the law." *Municipal Bond & Mortgage Corp. v. Bishop's Harbor Drainage Dist.*, 17 So. 2d 226, 227 (Fla. 1944). The Florida Supreme Court has also described good faith as "there being a complete absence of fraud or bad faith at any time" and credited a decision below that "no fraud or bad faith . . . has been shown" in affirming that the *de facto* corporation at issue acted in good faith. *Demko v. Judge*, 58 So. 2d 692, 693 (Fla. 1952) (en banc). And at least one Florida appeals court has cited approvingly to *Cantor v. Sunshine Greenery, Inc.*, a New Jersey case in which, much like this case, an unexplained omission by the state government caused a potential legal defect in the legal status of incorporation. In *Cantor*, it was held that a *de facto* corporation existed where a certificate of incorporation had been timely mailed to the Secretary of State but for unexplained reasons was not filed until two days after execution of the lease at issue. *Ratner v. Cent. Nat. Bank of Miami*, 414 So. 2d 210, 212 (Fla. Dist. Ct. App. 1982) (citing *Cantor v. Sunshine Greenery, Inc.*, 398 A.2d 571 (Sup. Ct. N.J. 1979)).

The Florida Supreme Court has explained that "the ultimate question [of good faith] turns on that of a bona fides versus a sham attempt to follow the law." *Municipal Bond & Mortgage*, 17 So. 2d at 227. Plaintiffs point to no record evidence that any of LOTCHR's activities were a "sham attempt to follow the law." To the contrary, the record

indicates that LOTCHR engaged in the expected, legal activities of a railroad. In a case involving a special tax school district (a type of public corporation), the Florida Supreme Court viewed as persuasive the fact that the challenged "district was generally recognized and performed all the functions of such a district for years." *Gaulden v. Bellotte*, 83 So. 866, 867 (Fla. 1920). Here, as in *Gaulden*, the record indicates that LOTCHR was treated as a corporation and engaged in the regular corporate activity expected of a railroad. The record includes the Secretary of State's records of subsequent proceedings authorizing construction, maintenance, and operation of a branch railway to LOTCHR's main line, J.A. 989–93; the Report of the Secretary of State for the Years 1883-84, which references LOTCHR's existence as a Florida corporation, *Andrews*, 147 Fed. Cl. at 527; and documents incident to the condemnation proceedings, in which LOTCHR's directors attested that LOTCHR was "legally incorporated . . . under the laws of the state of Florida," J.A. 527–46.

The record evidence of LOTCHR's orderly conduct in furtherance of its corporate purpose, devoid of any suggestion of sham, fraud, or intentional noncompliance with Florida law, is uncontradicted evidence of good faith. Plaintiffs have identified no record evidence of fraud or sham by LOTCHR, nor of any contemporaneous problems with or skepticism about LOTCHR's corporate existence (including by parties who likely had an incentive to identify such problems, such as at least some of the defendants to the condemnation suit). Plaintiffs' arguments that the only honest belief LOTCHR's promoters could have held was that they failed to comply with Chapter 1987, or that the promoters of LOTCHR "may be presumed to have known that they had not received" a certificate of incorporation/letters patent, Appellant Br. 55–56, are attorney conjecture unsupported by any record evidence.

We further agree with the government that the facts of this case are readily distinguished from cases in which

Florida courts have found an absence of good faith on the part of a putative *de facto* corporation. In *Ratner*, the promoters held out the corporation as properly formed eight months before they even attempted to file the papers required for legal incorporation. 414 So. 2d at 212. In *Richmond*, "the legislature transcended or abused the power vested in it" by purporting to incorporate a public corporation even though the lands "were not then shown to be reasonably susceptible to municipal improvement," as required by existing law. 19 So. 2d at 793. And in *Municipal Bond & Mortgage*, the purported incorporators engaged in a "sham attempt" to incorporate a municipal drainage district by deeding small holdings to "paper owners" on the day the district was formed, despite holding only 213 of the 8400 acres involved. 17 So. 2d at 227–28. Unlike the instant case, these past Florida cases each include some affirmative record evidence from which a court could conclude that the putative corporation was not acting in good faith.

We conclude that, even drawing all factual inferences in Plaintiffs' favor, Plaintiffs have failed to "point to an evidentiary conflict created on the record" regarding LOTCHR's status as at least a *de facto* corporation. *See SRI International*, 775 F.2d at 1116. Accordingly, we affirm the Claims Court's grant of summary judgment on the basis that LOTCHR was at least a *de facto* corporation under Florida law at the time of the Shuford deed. Like the Claims Court, we thus conclude that all relevant property was conveyed by the Shuford deed and that LOTCHR was legally qualified to receive that conveyance. We do not reach the issue of whether the condemnation suit ever resulted in LOTCHR being put in possession of any property interest, nor do we reach any issues related to the Moore or Foster deeds.

CONCLUSION

We have considered Plaintiffs' remaining arguments and find them unpersuasive. For the reasons discussed, we affirm the Claims Court's finding that LOTCHR was operating as at least a *de facto* corporation under Florida law at the relevant times and was legally capable of receiving the conveyance of the Shuford deed. Accordingly, we *affirm* the Claims Court's grant of summary judgment in favor of the government.

**AFFIRMED**

COSTS

No costs.